UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT PRESSMAN | : | CIVIL ACTION NO. |
| | : | |
| V. | : | |
| | : | |
| ANNA G. PURCELL | : | NOVEMBER 14, 2017 |

## VERIFIED COMPLAINT

Plaintiff, Robert Pressman, by and through his attorney, and for his Verified Complaint against Defendant Anna G. Purcell, does hereby state as follows:

## NATURE OF CLAIM

1. This action arises out of a scheme concocted by Purcell to defraud Pressman. Mr. Pressman was fraudulently induced to purchase gifts and other valuables for Purcell, to pay numerous expenses for goods and services consumed by Purcell and her son, to pay for trips and moving expenses, to enter into a one-year Lease agreement for real property located in Greenwich, Connecticut for $17,000 per month, and to purchase a Cartier engagement ring for $127,300. Purcell fraudulently induced Mr. Pressman into believing that she intended to marry him when, in fact, Purcell with the probable assistance of her boyfriend, schemed to defraud Pressman and extort him. Purcell misrepresented a multitude of facts which allowed her to gain an undue influence over Mr. Pressman in order to reap a financial windfall from him.

2. Unbeknownst to Mr. Pressman, Purcell never intended to marry him and was playing a part in a scheme to defraud him for her benefit and the benefit of Purcell's boyfriend, James Palin. Purcell's true intentions were revealed after Mr. Pressman became violently ill and incapacitated on or about August 29, 2017 and, for a period of two full days, Purcell abandoned him, allowing his illness to progress and presumably leaving him to die or become incapacitated.

1

In the late afternoon of August 31, 2017, Pressman called 911 and was taken to Greenwich Hospital where it was determined that he had suffered two strokes.

3. After Pressman was hospitalized, Purcell pronounced that there was an agreement between herself and Pressman in which she would get $2 million if Pressman died or became incapacitated. No such agreement existed.

4. Pressman terminated the relationship while he was in the hospital on or about September 1, 2017, and thereafter, Purcell attempted to blackmail Pressman, demanding a list of twenty-two items for Pressman to pay in order to terminate the relationship, including $12 million, otherwise she would go public.

5. Mr. Pressman seeks the return of the Cartier engagement ring, jewelry, automobile and money that he transferred to her, as well as reimbursement for the goods and services purchased for her as a result of the fraud committed on him.

## PARTIES

6. Plaintiff, Robert Pressman ("Mr. Pressman"), is an individual domiciled in New York.

7. Pressman is 63 years old.

8. Defendant, Anna G. Purcell ("Purcell"), is an individual domiciled in Greenwich, Connecticut.

9. Purcell is 38 years old.

## JURISDICTION AND VENUE

10. Jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1), and the amount in controversy exceeds $75,000.00.

11. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is domiciled in Connecticut.

## FACTS APPLICABLE TO ALL COUNTS

12. Upon information and belief, Purcell and her partner, James Palin, concocted an elaborate scheme to defraud Pressman.

13. In late March of 2017, Pressman was in Puerto Rico at the San Juan Ritz Carlton for several weeks for a closing on a $125 million project that had been widely publicized in the newspaper.

14. In late March of 2017, while at the Ritz Carlton, Pressman was approached in the lobby of the hotel by a man, later identified as James Palin, who wanted to speak with Pressman about a possible business opportunity.

15. Pressman had never met James Palin prior to this time.

16. Pressman told the man (Palin) that he was not interested in exploring the business opportunity.

17. Shortly after Pressman met with Palin, on April 4, 2017, three days before Pressman's business project was set to close, Pressman was approached by Defendant Purcell at a restaurant in the Ritz Carlton.

18. Purcell, who was dressed provocatively at the restaurant, flirted with Pressman and seduced him.

19. Unbeknownst to Pressman, at the time, Palin and Purcell were either married and/or involved in a long-term romantic relationship, and they had been living together in a house in North Carolina for thirteen years that they had purchased together in or around 2004.

20. At the time Purcell approached Pressman, she indicated that she knew about Pressman's business project and that she knew many of the players involved in the business deal.

21. Purcell knew that Mr. Pressman was set to earn a substantial fee in connection with the $125 million project.

22. Purcell did not tell Pressman that she was in a relationship with Palin, the man who met with Pressman just a week or two before.

23. Immediately after meeting Purcell, Pressman and Purcell began spending a significant amount of time together.

24. Within two days after meeting Purcell, on April 6, 2017, Pressman began purchasing gifts for her. For the period of time from April 6, 2017 through August 28, 2017, Pressman purchased thousands of dollars' worth of jewelry and gifts for Purcell, including, but not limited to, a black faced Rolex watch from Rose Jewelers in Southampton, NY in the amount of $5,105.38; sapphire earrings from Betteridge Jewelers in Greenwich, CT in the amount of $5,495.25; and a twenty-two diamond eternity band ring from London Jewelers in the amount of $5,757.13; diamond flower cluster earrings from London Jewelers in the amount of $2,522.27; a silver Elsa Perretti bracelet purchased for $950.47; exercise equipment from Gym Source in the amount of $2,223.43; electronics at Best Buy for $3,391.35; various items at Bed Bath & Beyond in the amount of $4,591.57; a Jeep Grand Cherokee for approximately $40,350.46; and cash gifts of $3,000 on July 5, 2017, $4,700 on July 27, 2017, and $12,300 on August 8, 2017.

25. Pressman also began paying Cobra medical and dental health insurance for Purcell and her minor son.

26. In May of 2017, Pressman also began paying ongoing legal bills incurred by Purcell in North Carolina and has paid to date $9,983.50 to Purcell's attorney.

27. Pressman also purchased a Jeep Grand Cherokee for approximately $40,350.46 for Purcell.

28. While Pressman and Purcell were vacationing in Antigua in or around June 11-June 16, 2017, Pressman first proposed marriage to Purcell.

29. On or about June 23, 2017, Pressman proposed marriage to Purcell a second time while they were at the Cartier retail store in New York City.

30. As a gift in contemplation of marriage, Pressman gave Purcell a Cartier engagement ring that he purchased for $127,300.

31. Purcell accepted Mr. Pressman's marriage proposal and, consequently, physical possession of the ring, even though she had no intention of ever marrying him.

32. On or about July 14, 2017, Pressman and Purcell enter into a lease as co-tenants for a residential property located at 69 Porchuck Road, Greenwich.

33. The Lease term commenced on August 28, 2017 and was for monthly rent in the amount of $17,000 per month.

34. During the week of August 14, 2017, Pressman notified his wife that he wanted a divorce.

35. Pressman paid all moving expenses for Purcell's move from North Carolina, amounting to approximately $7,000 in moving expenses.

36. On or about August 25, 2017, Pressman moved his personal belongings and certain furniture out of his home that he shared with his wife in New York and had them moved to Greenwich.

37. On August 26, 2017, Pressman arrived in Greenwich and stayed at the Greenwich Hyatt with Purcell.

38. On August 28, 2017, Pressman and Purcell moved into the rental home at 69 Porchuck Road.

39. On the day of the move, Pressman began to not feel well.

40. On August 29, 2017, Pressman was extremely dizzy, could not stand up, and was vomiting.

41. On that date, he fell down several times and a bed frame fell on top of him, but Purcell, who witnessed the incident, did not help.

42. Instead, she left Pressman in the home by himself for long periods of time.

43. On August 30, 2017, Pressman continued to be dizzy and to vomit and he could not stand.

44. Purcell would leave the house for long periods of time, allowing Pressman to languish on his own.

45. On August 30, 2017, Purcell took a 1 minute 48 second video recording of Pressman sleeping and twitching on the bed. Pressman was unaware of what was happening.

46. By the third day, August 31, 2017, Pressman continued to be dizzy, could not stand, and was vomiting. His condition had significantly deteriorated.

47. Purcell was out of the home for most, if not all, of the day and ignored a very serious situation.

48. In the late afternoon on August 31, 2017, Pressman's condition was so dire, he somehow managed to call 911 for help.

49. Between August 29 and August 31, 2017, Pressman had two strokes while languishing in the Greenwich home without any intervention.

50. He was hospitalized for one week and then was in a rehabilitation facility for an additional two and a half weeks.

51. While Pressman was in the hospital, Purcell took $7,000 in cash that Pressman had in the house, $2-3,000 in cash that was in his wallet, as well as approximately $2,000 of foreign currency taken from his passport wallet.

52. On September 1, 2017, while Purcell was visiting Pressman in the hospital, Pressman terminated his relationship with Purcell.

53. On September 1, 2017, Purcell told Pressman that he would not get her to leave for under $600,000.

54. Purcell then telephoned Pressman's friend, who is also an attorney, and stated that there was an agreement between her and Pressman that if Pressman died or became incapacitated, she would get $2 million.

55. Pressman never entered into any such agreement with Purcell.

56. On September 6, 2017, Purcell attempted to blackmail Pressman and extort a laundry list of payments and money from him, amounting to well in excess of $12 million.

57. In an email dated September 6, 2017, a true and correct copy of which is annexed hereto as Exhibit A, sent to Pressman's friend/lawyer, Purcell demanded that Pressman pay the following:

    a. Payment of her COBRA for two years;

    b. Mortgage payment on her home in Mooresville, NC;

    c. Payment of utilities for Mooresville home;

    d. Payment of $600/month for a house manager to manage her Mooresville home;

    e. Payments to a law firm representing her in North Carolina;

    f. Flight and expenses to Mooresville and shipping expenses for items that need to be moved to Connecticut;

    g. Phone for her son;

    h. Laptop for her son;

    i. Mustang for her son;

    j. College tuition for her son;

    k. $10,000 per month allowance for clothing;

    l. Rental payments for the Greenwich house for two years ($17,000 per month);

    m. Utilities, maintenance, repairs for the Greenwich house;

    n. Food and house supplies for the Greenwich house;

    o. Insurance, registration and all car expenses;

    p. Insurance on all other property;

    q. Taxes, fees and other costs associated with the Greenwich house;

    r. Law school tuition at Yale;

    s. Completion of Purcell's tax return for last year;

    t. Liquidation of Purcell's grandmother's estate;

    u. All furniture in the house;

    v. $12 million.

58. In exchange for satisfaction of her demands, Purcell promised that she would "agree to release all claims and indemnify and hold harmless Mr. Pressman and Mrs. Samson and their estates. Further, I will agree to not publish or share information regarding the situation which names either family."

59. Fearing that his safety would be compromised if he returned, Pressman has not returned to the home in Greenwich.

60. Purcell continues to live at the Greenwich house.

61. Purcell returned Pressman's empty wallet, his business briefcase, computer, some clothes and some personal effects, and his car, but a significant amount of Pressman's furnishings and personal effects remain in the Greenwich house.

62. Upon information and belief, Purcell continues to possess the Cartier engagement ring and other valuable assets transferred to her.

63. Purcell refuses and has failed to return the engagement ring and other assets.

64. Since Pressman was hospitalized, Purcell, who has no known income and is unemployed, has paid off the outstanding mortgage on her house that she jointly owns in Mooresville, North Carolina with James Palin.

65. Upon information and belief, the outstanding debt on Purcell's house in Mooresville, North Carolina was equal to or in excess of the value of the home.

66. As a result of Purcell's fraudulent scheme, Pressman entered into the Lease for the Greenwich house, made payments on Purcell's behalf, financially supported Purcell in a lavish lifestyle, and purchased gifts and an engagement ring conditioned on the parties marrying.

67. Had Pressman known that Purcell was scheming to defraud Pressman and that she was never intending to marry Pressman, Pressman never would have expended such sums and made such purchases.

## COUNT I
## FRAUD

68. Pressman repeats and realleges paragraphs 1 through 67 of the Complaint as if set forth fully herein.

69. At all relevant times, Purcell falsely represented to Pressman that she intended to marry him and used their relationship in order to induce Pressman to make expenditures on Purcell's behalf, enter into a $17,000 per month lease for the Greenwich home and pay five months' rent in advance, financially support Purcell in a lavish lifestyle, and purchase gifts and a $127,300 Cartier engagement ring conditioned on the parties marrying.

70. At all relevant times, Purcell was scheming to defraud Pressman and used their relationship as a means to get to Pressman's money and acquire gifts for her benefit.

71. Purcell never had any intention of marrying Pressman.

72. Purcell's representations were false and she knew them to be false at the time she made them.

73. Pressman acted in reliance on Purcell's false representations to his detriment.

74. Pressman has been damaged.

## COUNT II
## CONVERSION

75. Pressman repeats and realleges paragraphs 1 through 67 of the Complaint as if set forth fully herein.

76. Pressman purchased the Cartier engagement ring and is the rightful owner of the ring.

77. Purcell has assumed and exercised ownership over the Cartier engagement ring to the exclusion of Pressman's rights.

78. Purcell has refused and failed to return the engagement ring.

79. Pressman has been deprived of his property permanently and has been damaged.

## COUNT III
## UNJUST ENRICHMENT

80. Pressman repeats and realleges paragraphs 1 through 67 of the Complaint as if set forth fully herein.

81. Pressman purchased the Cartier engagement ring for $127,300.

82. Pressman proposed marriage to Purcell and gave the Cartier engagement ring to Purcell as a conditional gift in contemplation of their subsequent marriage.

83. The marriage did not take place and the relationship has terminated.

84. Purcell has refused and failed to return the Cartier engagement ring and remains in possession of it without Pressman's authorization.

85. Purcell has been unjustly benefitted to the detriment of Pressman.

86. Pressman is entitled to equitable relief of return of the ring or, alternatively, for money damages in the amount of the purchase price of $127,300.

## COUNT IV
## UNJUST ENRICHMENT

87. Pressman repeats and realleges paragraphs 1 through 67 of the Complaint as if set forth fully herein.

88. Pressman and Purcell entered into a Lease, dated July 18, 2017, as co-tenants of the premises located at 69 Porchuck Road, Greenwich, Connecticut.

89. The Lease term commenced on August 28, 2017 for a one year period.

90. The monthly rent for the premises is $17,000.

91. Pressman paid a security deposit of $34,000 in connection with the Lease.

92.     Pressman also entered into an escrow agreement wherein he paid five months' rent in the amount of $85,000 into an escrow account for the benefit of the Landlord to be used for monthly rent beginning on October 1, 2017.

93.     Pressman has not been back to the premises since August 31, 2017.

94.     Purcell has refused and failed to vacate the premises and Purcell has refused and failed to pay any rent or utilities or other expenses for the Greenwich house.

95.     Purcell has been unjustly benefitted by her refusal to vacate the premises and her refusal to pay any of the expenses incidental to the Lease, to the detriment of Pressman.

96.     Pressman has been damaged.

## COUNT V
## UNJUST ENRICHMENT

97.     Pressman repeats and realleges paragraphs 1 through 67 of the Complaint as if set forth fully herein.

98.     Pressman purchased gifts for Purcell to commemorate their engagement and in contemplation of their marriage including, but not limited to, a Jeep Grand Cherokee, a twenty-two diamond eternity band, sapphire earrings, a Rolex watch, an Elsa Perretti bracelet, gym equipment and electronics, among other gifts.

99.     The aforementioned items were conditional gifts, conditioned upon the parties' subsequent marriage.

100.    The relationship between Purcell and Pressman has terminated.

101.    Pressman is the rightful owner of the aforementioned items.

102.    Purcell has refused and failed to return the aforementioned items.

103.    Purcell has been unjustly benefitted by her refusal to return the aforementioned items and other conditional gifts, to the detriment of Pressman.

104. Pressman has been damaged and seeks the return of the conditional gifts or reimbursement of their value.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. Return of the Cartier engagement ring or, alternatively, reimbursement of the purchase price of $127,300;

2. Return of the Jeep Grand Cherokee, all other jewelry and gifts purchased by Pressman, including but not limited to, the diamond eternity band, sapphire earrings, an Elsa Perretti necklace, a Rolex watch, and the return of the gym equipment and electronics, and return of all other property, gifts and assets purchased by Pressman;

3. A temporary injunction enjoining Purcell from selling, transferring or otherwise disposing of the Cartier engagement ring during the pendency of this lawsuit;

4. Restitution;

5. Monetary damages;

6. Punitive damages;

7. Attorneys' fees and costs; and

8. Such additional or alternative relief as this Court may deem just and proper.

Dated: November 14, 2017

> BY: /s/ Philip Russell
> Philip Russell, Esq.
> Fed Bar No. CT03127
> Attorney for Plaintiff
> Philip Russell, LLC
> 66 Field Point Road
> P.O. Box 1437
> Greenwich, CT 06836
> (203) 661-4200
> E-Mail: efile@greenwichlegal.com

**VERIFICATION**

State of ~~New York~~ Connecticut )
County of ~~Suffolk~~ Fairfield ) ss. Greenwich
)

Robert Pressman, being duly sworn, deposes and says:

1. I am over the age of 18 and familiar with the obligations of an oath.

2. I am the Plaintiff herein and as such am fully familiar with the facts set forth in the Verified Complaint herein.

3. These allegations are true and based upon my direct knowledge or upon information and belief. That which I know to be true based upon information and belief is based on sources of information and belief which include, *inter alia* conversations with my attorneys, family members, or other individuals.

_____
ROBERT PRESSMAN

Sworn to before me the 14th day of November, 2017

_____
Notary Public

Shirley A. Reinoso
NOTARY PUBLIC
State of Connecticut
My Commission Expires
June 30, 2020

# EXHIBIT A



Mitchell Baker &lt;mjbaker100@gmail.com&gt;

## Fwd: Per your request
1 message

**Anna Purcell** &lt;purcag7@gmail.com&gt;　　　　　　　　　　　　　　　　　　　　　Wed, Sep 6, 2017 at 9:01 AM
To: mjbaker100@gmail.com

Mitch,

Now that my head is clearer and my son has reminded me of some things which were promised, I have put together the following per your request. In no particular order:

1) payment of my COBRA for 2 yrs (was due 9/1)
2) Mortgage payment on Mooresville, NC house (was due 9/1)
3) Mooresville utilities (should be minimal)
4) Mooresville House Manager ($600/mo)
5) Payments to Essex Richards (Law firm handling sale of house in Mooresville)
6) Flight & expenses to Mooresville + any other shipping of items that need to be moved to CT
7) Phone for Nate
8) Laptop for Nate
9) Mustang for Nate
10) College for Nate
11) $10k allowance for me each month for clothing
12) 2 years in this house so that Nate can finish school
13) Utilities, maintenance, repairs, etc. for this property
14) Food & house supplies for this property
15) Insurance, Registration, and all car expenses
16) Insurance on all other property
17) Taxes, fees, or other costs associated with the property
18) Law school tuition at Yale
19) Completion of my tax return for last year
20) Liquidation of my grandmother's estate

21) All furniture in the house
21) $12 Million

In return for the above, I will agree to release all claims and indemnify and hold harmless Mr. Pressman and Mrs. Samson and their estates. Further, I will agree to not publish or share information regarding the situation which names either family.

Best,

Anna