```
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
=============================:
ROBERT PRESSMAN,              :
     Plaintiff,              :
                             :
     — versus —             :
                             :
ANNA PURCELL,                :
     Defendant.             :
=============================:
ANNA PURCELL,                :
     Third-Party Plaintiff,  :    17-cv-1918 (JCH)
                             :
     — versus —             :
                             :    Hon. Janet C. Hall
TRITON EQUITY PARTNERS, LLC, :    U.S. District Judge
LA BOB, INC., and ROBERT     :
PRESSMAN,                    :
     Third Party Defendants, :
     Jointly and Severally.  :
=============================:
```

### THIRD PARTY PLAINTIFF ANNA PURCELL'S RESPONSE TO THIRD PARTY DEFENDANTS' MOTION TO DISMISS
### F.R.Civ.P. Rule 12(b)

Bernard V. Kleinman, Esq.
Law Office of Bernard V. Kleinman, PLLC
Attorney for Third Party Plaintiff Anna Purcell
108 Village Square
Suite 313
Somers, NY 10589-2305
Tel. 914.644.6660
Fax 914.694.1647
Email: *attrnylwyr@yahoo.com*

Date Served: June 5, 2018

# <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ ii

Statement of Facts ................................................................................................ 1

Legal Argument

   I. The Standard of Review (F.R.Civ.P. Rule 12(b)) ...................................... 5

   II. The Law and Facts, As Applied Here, Requires the Denial
      of the Relief Sought by the Defendants

     A. The Connecticut Heart Balm Statute Does Not Preclude the Relief Sought
       in Third Party Plaintiff's Causes of Action for Fraud in the Inducement
       (First Count), Fraud and Misrepresentation (Fifth Count), Intentional
       Infliction of Emotional Distress (Seventh Count), and Negligent Infliction
       of Emotional Distress (Eighth Count) (See Third Party Defendants'
       Memorandum of Law at pp. 5-8) ........................................................ 6

     B. The Third Party Plaintiff Has Satisfied the Requirements of Rule 9(b)
       As Against LA BOB, INC. and TRITON EQUITY PARTNERS, LLC
       as to Her Fraud in the Inducement Claim (See Third Party Defendants'
       Memorandum of Law at pp. 8-11) ...................................................... 11

     C. Cause of Action Second for Abuse of Process Is Timely and
       Should Not be Dismissed (See Third Party Defendants'
       Memorandum of Law at pp. 11-13) ..................................................... 11

     D. The Cause of Action For Malicious Prosecution Satisfies the
       Requirements Under Connecticut Law (See Third Party
       Defendants' Memorandum of Law at pp. 13-14) ............................... 12

     E. LA BOB, INC. is a Proper Party to the Causes of Action for
       Breach of Contract (See Third Party Defendants' Memorandum
       of Law at pp. 14-15) ........................................................................... 14

     F. The Third Party Plaintiff's Claim for Fraud as Against Third Party
       Defendants LA BOB and TRITON EQUITY PARNERS, LLC
       Satisfies the Requirements of Rule 9(b)
       (See Third Party Defendants' Memorandum of Law at pp. 15-16) ..... 15

     G. LA BOB, INC. is a Proper Party to the Causes of Action for
       Breach of Covenant of Good Faith and Fair Dealing
       (See Third Party Defendants' Memorandum of Law at pp. 16-17) ..... 17

     H. Cause of Action for Intentional Infliction of Emotional
       Distress Survives Any Claim for Dismissal
       (See Third Party Defendants' Memorandum of Law at p. 17) ........... 17

     I. The Court Must Apply New York Law, and Entertain the
       Cause of Action Based Upon N.Y. C.P.L.R. § 213-c
       (See Third Party Defendants' Memorandum of Law at pp. 17-21) ..... 18

Conclusion ............................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................................... 5

*Bausch & Lomb, Inc. Securities Litigation, In re,*
    941 F. Supp. 1352 (W.D.N.Y. 1996) ................................................ 6

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ........................... 5

*Bolt Elec. Inc. v. City of New York*, 53 F.3d 465 (2d Cir. 1995) .......... 5

*Bouchard v. Sundberg*, 80 Conn. App. 180, 834 A.2d 744 (2003) ......... 8

*Brown v. Strum*, 350 F. Supp.2d 346 (D. Conn. 2004) .......................... 7

*Cayo v. Sefcik*, 2014 WL 3419578 (D. Conn. 2014) .............................13

*Colli v. Kamins,* 39 Conn. Supp. 75, 468 A.2d 295 (1983) ...................13

*Coppola Constr. Co. v. Hoffman Enters. Ltd. Partnership,*
    309 Conn. 342, 71 A.3d 480 (2013) ...............................................15

*Davis v. Pope*, 2013 WL 3934209 (S.D. Ga. 2013) ..............................21

*DeLaurentis v. City of New Haven,* 220 Conn. 225, 597 A.2d 807 (1991) .......13

*Doe v. Doe*, 122 Md. App. 295, 712 A.2d 132 (Ct. Spec. App. 1998) ........18

*East Point Sys., Inc. v. Steven Maxim, S2K, Inc.,* 133 F. Supp.3d 430 (D. Conn. 2015) .....10

*First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480 (S.D.N.Y. 1997) ..........6

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205 (2d Cir. 2004) ..........6

*Geysen v. Securitas Security Servs. USA, Inc.*, 322 Conn. 385, 142 A.3d 227 (2016) ..........17

*Kramer v. Petisi*, 285 Conn. 674, 940 A.2d 800 (2008) .......................10

*Landry v. Spitz,* 102 Conn. App. 34, 925 A.2d 334 (2007) ..................17

*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006) ......................6

*Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714 (2d Cir. 2013) ..........14

*McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519 (2d Cir. 1980) ..........15

*McHale v. W.B.S. Corp.*, 187 Conn. 444, 446 A.2d 815 (1982) ..........12

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir. 1993) ...............6

*Osborne v. Payne*, 31 S.W.3d 911 (S. Ct. Ky. 2000) ............................18

*Piccininni v. Hajus*, 180 Conn. 369 (1980) ...........................................8

*Poston v. Poston,* 112 N.C. App. 849, 436 S.E.2d 854 (1993) .............18

*Pressman v. Pressman*, No. 5A02-0394584S, 2004 Conn. Super. 17396 (2004) ..........1

*Quinn v. Walsh*, 49 Mass. App. Ct. 696 (Ct. App. 2000) ....................18

*Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009) ................................................13

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ..................................................... 5

*Rouette, In re*, 564 B.R. 157 (Bnkr. D. Conn. 2017) ...........................................16

*Ruprecht v. Ruprecht*, 252 N.J. Super. 230, 599 A.2d 604 (Ch. Div. 1991) ...........18

*RWP Consolidated, L.P. v. Salvatore*, 460 F. Supp.2d 351 (D. Conn. 2006) .........15

*Seeley v. Chase*, 443 F.3d 1290 (10th Cir. 2006) ..................................................20

*Stewart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992) ...................................... 6

*Straus v. Cilek*, 418 N.W.2d 378 (Ia. Ct. App. 1987) ...........................................18

*Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) .............14

*Utzler v. Braca*, 115 Conn. App. 261, 972 A.2d 743 (2009) ................................16

*Vista Outdoor, Inc. v. Reeves Family Trust*, 2018 WL 846559 (2d Cir. 2018) ...........17

*Whittington v. Whittington*, 766 S.W.2d 73 (Ky. Ct. App. 1989) ...........................18

*Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp.3d 497 (S.D.N.Y. 2017) .......... 9

*Wilenta Feed, Inc. v. Arnold Food Co.*, 2006 WL 798916 (D. Conn. 2006) .......... 9

*Wright Medical Technology Liability Litigation, In re*,
    178 F. Supp.3d 1321 (N.D. Ga. 2016) ...........................................................20

## STATUTES/RULES

28 U.S.C. §§ 1404, 1406 ................................................................................19

F.R.Civ.P. Rule 9 ..........................................................................................16

F.R.Civ.P. Rule 12 ......................................................................................... 5-6

F.R.E. Rule 404 .............................................................................................20

F.R.E. Rule 413 ............................................................................................20-21

F.R.R. Rule 415 ............................................................................................20-21

Conn. Genl. Stats. § 52-572b ......................................................................... 6-11

N.Y. C.P.L.R. § 213-c ...................................................................................18-21

N.Y. C.P.L.R. §§ 301, 503(a) ..........................................................................20

Restatement 2d Conflict of Laws § 145 ...........................................................20

Williston, *Contracts* § 63.22 (4th ed. Lord 2002) ..............................................17

## Statement of Facts

In the classic manner of blaming the victim, the Third Party Plaintiffs herein attempt to re-write history so as to support their claim.  Disappointingly, in the era of #MeToo, the Third Party Plaintiff, Ms. Purcell, is characterized by her accuser, Pressman, by and through his counsel Ms. Keenan, as a schemer and fraudster who somehow picked Pressman out of a group of people in a hotel restaurant, and commenced an involved scheme to defraud him and convince him to make numerous gifts to her and her teenage son.  All of this occurring while Pressman, an experienced businessman, was in Puerto Rico on a multi-million dollar real estate venture.

The "Factual Background" presented by Ms. Keenan is a fabrication and fiction that is only present in the mind of her client — a man once described by a judge in Connecticut as a father and husband who had no qualms about abandoning his wife and children, *viz.*,

> The evidence presented paints a clear picture that the primary cause of the breakdown of the marriage was due to the defendant's absence from family life; emotional neglect of his wife [Holly Pressman] and children; failure to participate in the care of the oldest son, Edmund; his sometime verbal abuse, including ridicule of Mrs. Pressman's parents; secretive control of financial matters affecting the wife; and turmoil associated with his parents' and siblings' feuding. . . .

*Pressman v. Pressman*, No. 5A02-0394584S, 2004 Conn. Super. 17396 (Nov. 8, 2004).

As the saying goes: "a tiger does not change its stripes" — Pressman, sadly for those around him, was, is, and likely always will be as the Judge in his matrimonial action in 2004 described him.

That being said, the better read of Ms. Keenan's "factual" recitation, is to substitute Ms. Purcell's name for that of Pressman, and *vice versa*.  It was Pressman who pursued Ms. Purcell in Puerto Rico.  It was Pressman who, on his own, with no inducements or commitments from Ms. Purcell, made numerous gifts to her.  (The idea that somehow Ms. Purcell "induced Pressman to financially support Purcell in a lavish lifestyle" is laughable but for the harm that he has done to the Third Party Plaintiff.)

As to the "lavish lifestyle", there is no evidence of what this lifestyle was.  A trip to Antigua, a stay in a hotel in Manhattan, tickets to a Broadway show, do not amount to "a lavish lifestyle".  To argue that the rental of the Berlin home in Greenwich was "a lavish lifestyle" is similarly absurd, as (a) Pressman defaulted on his lease terms with the Berlins forcing them to sue him in Norwalk Superior Court,[1] and (b) Pressman only stayed for all of three days, and (c) his actions left Ms. Purcell with the entire burden of the maintaining the rental — with no support from him — including paying for the utilities, and all other costs after she had left her life and home in North Carolina.  However, all one needs do is look at the quoted statement above from the 2004 matrimonial, and one can easily see how Pressman would behave as so.

As to the assertion that the gifts were "conditional", this is entirely belied by the facts.[2]  Repeatedly Pressman made clear that the items he purchased were gifts, and just that, "gifts".  He never made any claim that they were conditioned on anything or any action on Ms. Purcell's part.  For Pressman to now seek return on these items, is, of course, another example of his word (both verbal and written) meaning nothing at all.  As the Counter Claim makes clear Ms. Purcell never asked for any of these items, she never dragged Pressman to an auto dealer to buy a car for her, she never told him that she would not marry him unless he purchased material items for her.  Only in Pressman's perverted world is the "love" of a person for sale, and the only true commitment to another person is one made with dollars and cents. Sad as this may be about an individual, and their total lack of morals, what is sadder are the victims —

---

[1] See *Pressman v. Berlin et al*., NWH-CV17-6003090-S, Norwalk Hsg. Ct., annexed hereto as **Exhibit 1**.

[2] Pressman, in his Verified Complaint, makes it clear that these were all "gifts".  His listing of these items, at no time, describes them as conditioned on any actions by Ms. Purcell.  See Verified Complaint at ¶ 24.  And, of course, the fact that the only item he has asked the Court to hold as a "conditional gift" is the "engagement" ring; upon none of the other listed items has a similar demand been made.  Clearly his Counsel understands that, as weak as his legs are to support the demand for return of the "engagement ring", there is absolutely no legal basis for return of the other items.

be they Holly Pressman, Edmund Pressman, or Anna Purcell.  (Though, the likelihood of other people being out there and having been victimized is certainly not beyond the realm of possibility.)

Of course, Pressman's description of the nature of Ms. Purcell's claim is entirely incorrect.  The "crux" of the Third Party Plaintiff's claim is not "that she was involved in a romantic relationship with Pressman that terminated and now she wants him to pay."  Pressman Memo of Law at p. 3.  The crux is that Ms. Purcell was actively pursued by Pressman, was informed by him that he was divorced and could marry, and based upon that total lie (something that Pressman conveniently forgets to include in their pleading) left her home and job in North Carolina and moved to Connecticut with her teenage son.

As Ms. Purcell states, in April 2017 she met Pressman at the Ritz Carlton Hotel in San Juan, P.R. He approached her, and struck up a conversation.  To Ms. Purcell, Pressman was making an attempt to either begin some sort of romantic relationship, or was just looking for sex.  Third Party Complaint at ¶¶ 19, 20.  In a clear attempt to impress her, Pressman began telling her about a big real estate deal in which he was involved.  *Id*. at ¶ 21.  Pressman saw Ms. Purcell the next day, and even attempted to kiss her, but she refused.  *Id*. at ¶¶ 22, 23.  While in Puerto Rico, Pressman was acting in the capacity as an officer or director for the named Third Party Defendants, LA BOB, INC., and TRITON EQUITY PARTNERS, LLC.  *Id*. at ¶ 24.

After Pressman's return to the States, he began an active pursuit of Ms. Purcell; a pursuit in which he was the pro-active party.  *Id*. at ¶¶ 27, 28.  Besides professing his love for her, he began telling her fantastical tales about his supposed involvement with Mossad, the CIA and other activities.[3]  All of these statements were clearly designed to impress and woo Ms. Purcell.

---

[3] Whether, in fact, Pressman believes them to be true himself or not, is another question.  If he, himself, actually believes in these delusions, that may explain much of his conduct.  However, the more likely scenario is that he would weave these tales to impress Ms. Purcell (and perhaps others) into his bed.

At this time the Third Party Plaintiff was employed with a managed health care company in North Carolina earning approximately $150,000 *per annum*.  As a single mother with a teenage son, she was not immune to Pressman's supplications, and the possibility that perhaps she had found an honest man to spend her life with, who could provide for her and her son, was not beyond the realm of possibility.  Ms. Purcell, to be sure, entered this relationship, honestly and openly and hid nothing.  All she was looking for (foolishly, as it turned out) was someone to love and to be loved by.  What she got was a charlatan and fraudster with little, if any, moral compass.

It was not until June that Pressman actually asked Ms. Pressman to marry him.[4]  And, of course, all of this time, Ms. Purcell is acting under the belief and perception that Pressman is divorced.  Unlike Pressman, Ms. Purcell's morals and ethics would forbid her to commence any type of romantic or sexual relationship with a married individual.  Unfortunately, for both Ms. Purcell and her son, that was not true of Pressman.

As the Third Party Complaint makes clear, on or around June 15, 2017, Pressman, by and through his business entities (LA BOB and TRITON) submitted a contract to Ms. Purcell.  A copy of the contract is set forth as Exhibit A to the Third Party Complaint.  Ms. Purcell accepted these terms, and, although never actually signed, the two of them acted in full compliance with it — Ms. Purcell moving to Connecticut and Pressman acting as if the contract was in full force and effect.  There was a complete Offer and Acceptance on both party's parts.  See Third Party Complaint at ¶¶ 35 thru 40.

On August 28th, 2017, Pressman and Ms. Purcell moved into the leased premises in Greenwich.  *Id*. at ¶ 44.  Three days later Pressman suffered some sort of medical episode, and was admitted to a local hospital.  *Id*. at ¶ 45.  And, on the following day, to her utter shock, embarrassment, surprise and disgust,

---

[4] Pressman's list of gifts provides no dates for when these were purchased.  Clearly, anything purchased before the marriage proposal is outside of any claim that the gift was conditional.  And, needless to say, unless the gift was actually made conditional on the marriage taking place, then all of the gifts were just that — gifts.

Ms. Purcell discovered that Pressman was still married and could not marry her, even if he actually ever intended to do so.  *Id*. at ¶ 46.

Pressman never returned to the Greenwich leasehold, and left the Third Party Plaintiff and her son to fend on their own, knowing that they barely had the resources to do so.  *Id*. at ¶ 49.  Soon, Pressman, totally in character, also sought to renege on his lease with the Berlins (the landlords), and took certain actions designed to achieve this goal.  *Id*. at ¶¶ 50, 51, 54 thru 57.

<u>Legal Arguments</u>

**I. The Standard of Review (Federal Rules of Civil Proc. 12(b))**

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009), (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*, *citing Twombly, supra,* 550 U.S. at 556.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly, supra,* 550 U.S. at 555 (internal quotations, citations and alterations omitted).  As long as the plaintiff's allegations are plausible the court may not dismiss the complaint.  *Id.* at 570; *Iqbal, supra,* 556 U.S. at 680.

Therefore, for the purpose of the Plaintiffs' Third Party Defendants' motion to dismiss, this Court must accept as true all of the facts alleged in the Third Party Complaint (s*ee, e.g.*, *Bolt Elec. Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995)), and draw all reasonable inferences in favor of the Third

Party Plaintiff.  *See, e.g., Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004).  "[U]nless it appears <u>beyond doubt</u> that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief", the Defendants' motions to dismiss must be rejected.  *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992) (internal quotations omitted), Emphasis added.

Additionally, claims sounding in fraud must meet Rule 9(b)'s heightened pleading standard.  *See* Fed. R. Civ. P. 9(b).  To comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006), quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993).

In alleging these facts, the plaintiff must meet the requirements of Rule 9(b) by asserting particular allegations against each defendant that apprise that defendant of the nature of its participation in the fraud.  When reviewing compliance with Rule 9(b), the court's inquiry "is not limited to specific paragraphs of the complaint viewed in isolation" – rather, the complaint is "read as a whole."  See *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 485 (S.D.N.Y. 1997).

Moreover, "Rule 9(b)'s requirement of particularity must be harmonized with the flexibility in pleading permitted under Rule 8 . . . which requires a 'short and plain statement' with each pleading being 'simple, concise and direct.'" *In re Bausch & Lomb, Inc. Securities Litigation*, 941 F. Supp. 1352, 1359 (W.D.N.Y. 1996) (internal citation omitted).

## II. The Law, As Applied Here, Requires the Denial of the Relief Sought by the Defendants

A. The Connecticut Heart Balm Statute Does Not Preclude the Relief Sought in Third Party Plaintiff's Causes of Action for Fraud in the Inducement (First Count), Fraud and Misrepresentation (Fifth Count), Intentional Infliction of Emotional Distress (Seventh Count), and Negligent Infliction of Emotional Distress (Eighth Count) (See Third Party Defendants' Memorandum of Law at pp. 5-8)

The gravamen of Pressman's claim for dismissal of these counts is that they are all barred by the Connecticut Heart Balm Statute, Conn. Genl. Stats. § 52-572b.  The statute provides as follows,

Alienation of affections and breach of promise actions abolished.  No action may be brought upon any cause arising from alienation of affections or from breach of a promise to marry.

As with all Heart Balm Statutes, this was enacted by the legislature in order to prevent a party from seeking relief based upon such common law grounds as alienation of affections, and breach of promise to marry.  The statute has been interpreted by the Supreme Court of Connecticut to preclude attendant lawsuits for fraud and other lawsuits related to the <u>failure to marry</u>.  *See, e.g., Brown v. Strum*, 350 F. Supp.2d 346, 350 (D. Conn. 2004).[5]

It needs to be noted that Section 52-572b is inapplicable as the Third Party Plaintiff makes it clear that her position is that Pressman (a) was incapable of marrying as he was already married, and (b) in any event, he never actually had any intent on marrying Ms. Purcell.  *See, e.g.*, Third Party Complaint at ¶ 102.

The problem however, is that the Third Party Plaintiff's claims herein are not for the Third Party Defendant's breach of his promise to marry.  Indeed the Third Party Defendants have thoroughly confused the nature of the Third Party Plaintiff's action.  Her complaint is not that Pressman promised to marry her and then did not.  Her complaint, in fact, does not lie within the parameters of the statute.  Her complaint, as she makes clear repeatedly, is that he lied about his marital status, and that in reliance

---

[5] The Third Party Defendants rely heavily upon *Brown* describing it as "instructive", and "analogous" to the case at bar.  See Memo of Law at pp. 6, 8.  However, in *Brown*, the Complaint only had two causes of action: Intentional Infliction of Emotional Distress, and some sort of fraudulent inducement for the plaintiff such that "[t]he Plaintiff did rely upon the Defendant's representation when agreeing to enter into an emotional, romantic and sexual relationship with the Defendant."  See *Brown v. Strum*, 3:03-cv-01969-JBA, Dkt. Entry No. 1, at ¶¶ 31-37, and 38-42, respectively.  In the case at bar there is no claim regarding damages as a result of having entered into a romantic relationship with Pressman.  Indeed, in *Brown*, in the Defendant's Motion to Dismiss, it was argued that "Plaintiff's 'injuries' in this case amount to 'contused feelings,' 'sentimental bruises,' 'wounded pride',  and 'mental anguish' all arising from alienation of affections and alleged deceit about marrying, . . ."  Defendant's Motion to Dismiss, Dkt. Entry No. 16 at p. 7.  As the Third Party Complaint herein makes clear, there are no such claims, as would be precluded under § 52-572b.  The claims, herein, are all based upon the lie that he was single and not married.  Indeed, the promise to marry is all but irrelevant to the causes of action here, as it is merely another fact that establishes Pressman's penchant for lying and subverting the truth for his own perverse and prurient interests.

upon that falsehood, she took certain actions — not actions based on his promise to marry, but on the lie about his marital status.  This is an essential and determinative distinction between the case at bar, and the cited precedents and arguments made by the Third Party Defendants.  *See, e.g.*, Third Party Complaint at ¶¶ 64, 99, 100, 102, 115.  The Third Party Claims are all based upon the underlying fraudulent inducement, only tangentially based upon a promise to marry, that caused Ms. Purcell to incur the damages that she now is seeking.  Instructive is the decision in *Piccininni v. Hajus*, 180 Conn. 369 (1980).  There, the Supreme Court of the State, laid out what type of actions are barred by the statute,

> In our view, the Act was designed to do away with excessive claims for damages, claims coercive by their very nature and, all too frequently, fraudulent in character; the purpose was to prevent the recovery of damages based upon contused feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation; for impairment of health, for expenditures made in anticipation of the wedding, for the deprivation of other opportunities to marry and for the loss of the pecuniary and social advantages which the marriage offered.

*Id*. at 373.

As is clear from the language above, what the statute bars is any suit that is <u>directly related to the failure to complete the marriage</u>.  Thus, the Court speaks of "expenditures made in anticipation of the wedding", and "blighted affections, wounded pride, mental anguish and social humiliation".  These are not the claims that Ms. Purcell is pursuing.  Her claims, while the facts of Pressman's lies were part of the fact pattern, rely upon a series of factual promises, representations, and actions that were wholly independent of the marriage proposal.  The Court in *Bouchard v. Sundberg*, 80 Conn. App. 180, 834 A.2d 744  (2003), made clear that the court's duty is to look at the underlying facts of the case, and that if the root cause of the asserted tort was encompassed within the parameters of the Heart Balm Statute, it would be precluded.  *Id*. at 198-99.

Here, while Pressman's lying about his marital status was a factor present throughout, it was not the only factor and that, in combination with his other actions, caused the tortious acts complained of.

The First Cause of Action (see Third Party Complaint at ¶¶ 60 thru 67) is for Fraud in the Inducement. As Ms. Purcell makes clear this action is rooted in statements made by Pressman that he "never had any intention or performing as represented".  *Id*. at ¶ 61.  And, these fraudulent statements were (a) his promise to marry, and — independent thereof — (b)

> the contractual promise, in writing, in contemplation of future services, and for past services, with Thirty Party Defendant TRITON.

*Id*. at ¶ 63.

This second basis was and is wholly independent of, and not premised at all on the promise to marry.

The elements of an action for Fraud in the Inducement are that the defrauded party was induced to enter into a contract based upon a promise to take some future action.  This future action can either be one that preceded the contract itself, or it can be in the terms of the contract itself.  See *Wilenta Feed, Inc. v. Arnold Food Co*., 2006 WL 798916 at *2 (D. Conn. 2006).  The promises enshrined in the contract, which were clearly discussed prior to the contracts "execution", served as the inducement for Ms. Purcell to not only agree to the terms of the contract, but also to suffer the damages as set forth in this Cause of Action.  See Third Party Complaint at ¶¶ 65, 66.  Similarly (and underlinedly), the promise to marry (based upon a knowing falsehood), served as a chronological predicate to the execution of the contract, and the damages suffered by the Third Party Plaintiff.  *Ibid*.  See *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp.3d 497, 506 (S.D.N.Y. 2017) ("[F]alse statements about a party's present financial condition or current ability to perform, made in order to induce a party to enter into a contract, will support a claim of fraudulent inducement.  Such statements are not promissory statements of what will be done in the future, but are instead misrepresentations of a present fact, made to induce the counter-party to enter the contract.").  These "misrepresentations of a present fact" cannot be defeated because they included a promise to marry.  They were a knowing falsehood.

Thus, since an independent basis exists for this Cause of Action, its dismissal should be denied.

The Third Party Plaintiff's Fifth Count alleges Fraud and Misrepresentation.  See Third Party Complaint at ¶¶ 98 thru 105.  This cause of action was not premised upon any "alienation of affections or breach of promise".  It was solely premised upon "PRESSMAN's representation that he was not married."  Third Party Complaint at ¶ 99.  Ms. Purcell has laid out clearly what the law is in Connecticut for such a tort (see *id*. at ¶ 101; see also *East Point Sys., Inc. v. Steven Maxim, S2K, Inc*., 133 F. Supp.3d 430, 435 (D. Conn. 2015)), along with her satisfaction of those elements.  *Id*. at ¶ 102.

A fraudulent representation is one that is "knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it."  *Kramer v. Petisi*, 285 Conn. 674, 940 A.2d 800, 806 n. 9 (2008)).  In the case at bar, it is the Third Party Plaintiff's allegation that had she known Pressman was married when he told her otherwise — <u>not</u> that he was making her a promise to marry him — she would never have agreed to upend her life as she did.  In other words, the misrepresentation was not that he would marry her, but — as a determinative critical difference — that he was single and unmarried (as is made clear in ¶¶ 99 and 102 of the Third Party Complaint).

The Third Party Defendants have clearly conflated the "promise to marry" with the lie about being single.  Each one, for these purposes was independent of one another.  Hence the Heart Balm Statute is of no avail to the Third Party Defendants and this Cause of Action must survive.

Third Party Claims Seven and Eight are for Intentional and Negligent Infliction of Emotional Distress, respectively.  See Third Party Complaint at ¶¶ 113-119, and 120-126, respectively.  In her Complaint she has laid out, respectively, the elements of each of these causes of action.  *Id*. at ¶¶ 114, and 121, respectively.  And, as required by the case law, she has set forth how she has satisfied each of the elements therein.  See *id*. at ¶¶ 115-118, 122-125, respectively.  And, as with Causes of Action First and Fifth, the gravamen of the complaint is <u>not</u> the promise to marry (which is wholly irrelevant to these causes of action), but, rather that Pressman lied to this individual about his marital status.  *Id*. at ¶¶ 115,

116, 122, 123.  Indeed, at no time in these Causes of Action does Ms. Purcell actually make any statement about a promise to marry, as this was wholly irrelevant to the Causes of Action herein.

Hence, these Causes of Action cannot be dismissed based upon the grounds asserted by the Third Party Defendants.

B. The Third Party Plaintiff Has Satisfied the Requirements of Rule 9(b) as Against LA BOB, INC. and TRITON EQUITY PARTNERS, LLC as to Her Fraud in the Inducement Claim (See Third Party Defendants' Memorandum of Law at pp. 8-11)

The Court here is directed, initially to the exposition set forth in Part "F", *infra*.

This argument of the Third Party Defendants is not based upon an attack on the allegations in the Cause of Action, but, rather, solely at the argument that LA BOB and TRITON are "separate corporate entities".  See Memo of Law at pp, 10-11.  As is argued forcefully (see "F" *infra*), and with available evidence (see **Exhibit 2** and **Exhibit 3**), Pressman and LA BOB and TRITON were, and are, all one and the same.  Whether Pressman paid a bill from one bank account or another apparently meant nothing to him.  In the classic example of a fraudster seeking to avoid personal liability, Pressman has utilized the assets and locations of both LA BOB and TRITON to conduct both his business and personal affairs.  Yet the evidence will not permit Pressman to avoid his liability, in whatever guise he poses.

This being the sole basis for this part of the Third Party Defendants' Motion to Dismiss, it should be denied.

C. Cause of Action Second for Abuse of Process Is Timely and Should Not be Dismissed (See Third Party Defendants' Memorandum of Law at pp. 11-13)

Third Party Plaintiff has set forth in her Complaint the lawful elements for such a cause of action.  See Third Party Complaint at ¶ 74.  She has further set forth the factual grounds that satisfy each of these elements.  See *id*. at ¶¶ 69-73, 75.  In response thereto, the Third Party Defendants have argued that this Cause of Action is not ripe in the absence of resolution of the claims in this action before Your Honor.  This is plainly a premature assertion by the Defendants.  If Ms. Purcell is unable, at trial, to establish the

facts as set forth in her Third Party Complaint, then the factfinders can so decide, and she will not prevail on this action.  However, if she can prove by a preponderance of the evidence — which she will be able to do so both with documentary and testimonial evidence (from both herself and witnesses) — that she has so satisfied the elements of the cause of action, then she will prevail.

Unfortunately, the Third Party Defendants have failed to properly read the Third Party Complaint. In ¶ 69, the Third Party Plaintiff refers to a lawsuit commenced by Pressman on November 14, 2017.  In ¶ 50 this lawsuit is that which was filed in Norwalk Superior Court, *Pressman v. Purcell*, CV17-5001619S.  A copy of that lawsuit is annexed hereto. See **Exhibit 4**.  It is not the within lawsuit, which, although filed on the same date, is not the same lawsuit.

It is thus a valid Cause of Action for which the cited cases are not applicable.  Hence, this aspect of the Motion to Dismiss must be denied.

D. The Cause of Action For Malicious Prosecution Satisfies the Requirements Under Connecticut Law
   (See Third Party Defendants' Memorandum of Law at pp. 13-14)

In her Third Party Complaint Ms. Purcell alleges that the Third Party Defendant Pressman instituted a criminal action against her by filing a criminal complaint with the Greenwich Police Department, without reasonable or justifiable cause, and that such action was terminated in her favor.  See Cause of Action Third at ¶¶ 19-21.  See **Exhibit 5**.  Pressman argues that this Cause of Action is legally defective as "no criminal proceeding was initiated or procured against Purcell, nor are there any allegations that those criminal proceedings terminated in her favor."  Pressman Memo of Law at p. 13.

In all respects — both legally and factually — the Third Party Defendant is in error.

Under Connecticut law the elements of a cause of action for malicious prosecution are as follows, *viz.*, (1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) "the defendant acted without probable cause"; and (4) "the defendant acted with malice."  *McHale v. W.B.S. Corp.*, 187 Conn. 444, 446 A.2d 815, 817

(1982).  The key here is that by filing the criminal complaint, Pressman "initiated a criminal proceeding." There is no requirement that an action or proceeding have begun in court.  The mere fact of the filing of the complaint is sufficient to satisfy the case law.  The proof that this is the law is satisfied by the fact that Connecticut has adopted a very liberal interpretation of the favorable termination requirement. *Roberts v. Babkiewicz*, 582 F.3d 418, 420-21 (2d Cir. 2009).  For example, in *Colli v. Kamins,* 39 Conn. Supp. 75, 468 A.2d 295, 297 (1983), the court stated, "An abandonment of a criminal proceeding, so far as the plaintiff's right to prevail is concerned, is the equivalent of its successful termination."  And, in *DeLaurentis v. City of New Haven,* 220 Conn. 225, 597 A.2d 807, 820 (1991), the Court stated, "[W]e have never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or non-liability, so long as the proceeding has terminated without consideration."  What these cases make clear is that as long as either the initiation of criminal proceedings by any means is eventually abandoned or found to be wanting, the elements of the cause of action have been satisfied.

   In the case at bar, Pressman filed a complaint with the Greenwich Police Department alleging that Ms. Purcell had assaulted him.  Third Party Complaint at ¶ 80.  This complaint was filed on November 6, 2017, alleging the assault took place on August 28th, 2017.  *Id.* at ¶¶ 79, 80.  This complaint was filed solely and exclusively so that Pressman could avoid his legal and contractual obligations to the Berlins (his landlord).  See *id.* at ¶ 83.[6]  The allegations in the criminal complaint were totally false, and were designed to malign Ms. Pressman for purposes collateral to the current action.  The complaint was eventually abandoned by the police as there was no basis for it having been made in the first place.

---

[6] This was not something as simple as reporting something to the police who then commence an investigation. *See, e.g., Cayo v. Sefcik*, 2014 WL 3419578 at \*4 (D. Conn. 2014).  This was a pro-active, intentional, and deliberate action on Pressman's part with no basis in fact.  See **Exhibit 1**.

Thus, Ms. Purcell has satisfied the elements of the statute, and this Cause of Action is ripe for litigation.

E. LA BOB, INC. is a Proper Party to the Causes of Action for Breach of Contract
   (See Third Party Defendants' Memorandum of Law at pp. 14-15)

The Third Party Plaintiff's Cause of Action for Breach of Contract (Cause of Action Fourth, ¶¶ 89 thru 97) names, as party Defendants LA BOB, INC., TRITON EQUITY PARTNERS, LLC, and Pressman.  The basis for naming LA BOB is that, as the Defendant acknowledges, Pressman "executed" the contract as follows, *viz*.,

> TRITON EQUITY PARTERS, LLC
> BY: LA BOB, INC. ITS MANAGING MEMBER
> BY; ROBERT L. PRESSMAN, ITS CEO
> See Third Party Complaint, Exhibit A at p. 2.

While it is true that LA BOB is not referenced in the Contract, any number of bases exist for naming LA BOB as a party (certainly in the absence of the completion of all discovery).  First of all, is the very fact that "TRITON" is "executing" the contract "BY: LA BOB, INC. ITS MANAGING MEMBER".  It is certainly reasonable, in the absence of any evidence to the contrary, that LA BOB may well hold some liability here based upon its execution of the contract.  Secondly, LA BOB, along with TRITON and Pressman himself, all have the same physical address — 81 Newtown Lane, # 351, East Hampton, NY 11937.  See Third Party Complaint at ¶¶ 25, 26.  See also **Exhibit 6**, copy of Pressman's N.Y.S. Operator's License.  Thirdly, Pressman has, in the past, always executed all documents as he has here: naming Triton, La Bob, and then himself as "Managing Member", "CEO".  See **Exhibit 2**, copies of correspondence, contracts, and other documents.  Indeed, it seems to be quite clear that LA BOB, INC. is a Managing Member of TRITON.  See *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (non-signatory party closely related to signatory may enforce certain terms of contract); *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ("a non-

signatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'  *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir. 1980)" *Id*. at 776.);  *RWP Consolidated, L.P. v. Salvatore*, 460 F. Supp.2d 351, 356-57 (D. Conn. 2006).

Since LA BOB is named as a signatory to much, if not all, of Pressman's business operations, including the contract herein, it is clearly plausible that LA BOB is a properly named party in the above-referenced Cause of Action.

Thus, this part of the Motion to Dismiss should be denied.

F. The Third Party Plaintiff's Claim for Fraud as Against Third Party Defendants LA BOB and TRITON EQUITY PARNERS, LLC Satisfies the Requirements of Rule 9(b) (See Third Party Defendants' Memorandum of Law at pp. 15-16)

The clear focus of this claim is that the allegations relating to LA BOB and TRITON are all centered on statements or actions that Pressman, himself, took.  First of all, the relationship of these two entities to the fraud is made clear in the fact that both LA BOB and TRITON are principal parties to the contract in dispute.  See discussion in Part D above.  Both TRITON and LA BOB share equal billing and liability with Pressman under the Contract.  As such, they are responsible for the actions of its member, Pressman, who signed the contract as such.  See generally *Coppola Constr. Co. v. Hoffman Enters. Ltd. Partnership,* 309 Conn. 342, 357, 71 A.3d 480 (2013).

However, even more to the point, and as will be established at trial, these two entities are mere shells for Pressman himself.  Pressman has repeatedly used the assets and funds of these entities to pay for personal expenses.  For example, Pressman complains that he paid some of the legal bills for Ms. Purcell.  See Pressman Complaint at ¶ 26.  This bill was actually paid by TRITON out of TRITON's own bank

account.[7]   See **Exhibit 2**, proof of payment to the law firm of Essex Richards, PA, in Charlotte, NC, that was handling a <u>personal</u> matter for Ms. Purcell.[8]

Proof of the payment of personal expenses from a business account may well go to piercing the corporate veil, and holding the individual liable.   Here, as set forth in Part D, *supra*, all three named parties — TRITON, LA BOB, and Pressman himself, have the same address.   The available evidence certainly has established a *prima facie* case for holding all three both separately and jointly liable.   *In re Rouette*, 564 B.R. 157, 174 (Bnkr. D. Conn. 2017) (Connecticut courts applying law of state of incorporation (N.Y.) on issue herein).   However, certainly, at this early stage, to dismiss this Cause of Action, when the Third Party Plaintiff's position is that these two entities are a fiction, and that they are merged into one party — Pressman — is premature and not sanctioned under Rule 12(b).

As to the requirements of Rule 9(b), essential to the Third Party Plaintiff's claim is the very fact that all of the named Third Party Defendants are one and the same.   Any statements, actions, or deceptions perpetrated by any one of these named parties is attributable to all three, both independently and collectively.   Finally, all three named Defendants are jointly and severally liable under the contract, and are also liable for all actions taken prior to the execution of the contract that induced Ms. Purcell to take the actions she did as a result of the Defendants' collective fraud.

Any dismissal on these grounds would be woefully premature, at best.

---

[7] Needless to say, if Pressman is treating the TRITON and LA BOB accounts as his own personal bank account, then other parties in interest to these entities may well have also been victims of Pressman's fraudulent behavior.   See *Utzler v. Braca*, 115 Conn. App. 261, 972 A.2d 743, 752-53 (2009).

[8] See also **Exhibit 7**, attached hereto.   This consists of the first page of the Berlin Lease, where the tenant is listed as "ROBERT PRESSMAN".   Also, attached is an email, sent from *pressman@tritonequity.com*, in which he informed the attorney for the Berlins, that "<u>We</u> have been advised by <u>our</u> bank, JPMorgan Chase, that <u>our</u> wire for the amount required under the Lease and Escrow has been received this morning, by your your [*sic*] bank, JPMorgan Chase."   Emphasis added.   Clearly, in the use of the first person plural, Pressman is speaking of himself alone here (and not himself and Ms. Purcell).   The email is signed "Robert L Pressman, Chief Executive Officer, Triton Equity Partners LLC"   The only conclusion to be reached is that Pressman and his "corporate entities" are one and the same.

G. LA BOB, INC. is a Proper Party to the Causes of Action for Breach of Covenant of Good Faith and Fair Dealing (See Third Party Defendants' Memorandum of Law at pp. 16-17)

In this part of Third Party Defendants' Motion to Dismiss, the party relies entirely upon the argument addressed in "E" above.  It relates to Cause of Action Sixth in the Third Party Complaint.  See Complaint at ¶¶ 106 thru 112.  This Cause of Action is laid out in the Complaint both as to its requisite elements (see *id*. at ¶ 107; see also *Geysen v. Securitas Security Servs. USA, Inc*., 322 Conn. 385, 142 A.3d 227, 237-38 (2016)), and the Third Party Plaintiff's satisfaction of those elements.  See *id*. at ¶¶ 108-111.

Just as the basis for holding LA BOB potentially liable under Breach of Contract action, the same rules of law apply here.  In *Landry v. Spitz,* 102 Conn. App. 34, 43, 925 A.2d 334 (2007), the Court stated that "'a party who evades the spirit of the contract . . . may be liable for breach of the implied covenant of good faith and fair dealing'", quoting Williston, *Contracts* § 63.22, p. 508 (4th ed. Lord 2002).  The evidence makes it clear that LA BOB was a party to this agreement.  See generally *Vista Outdoor, Inc. v. Reeves Family Trust*, 2018 WL 846559 at *1 n. 1 (2d Cir. 2018) (party not a signatory, as a *de facto* controlling interest, was properly named as a defendant).  Clearly, at this stage, to strike LA BOB as a party, would be premature, especially in light of the Exhibits set forth above.

H. Cause of Action for Intentional Infliction of Emotional Distress Survives Any Claim for Dismissal (See Third Party Defendants' Memorandum of Law at p. 17)

In what can only sadly be termed a sign of the times, the Third Party Defendant takes the position that his adulterous and lying behavior does not "demonstrate extreme and outrageous conduct".  Taking a page from President Trump, apparently, Pressman believes that such behavior is merely "ill-mannered" (such as not opening the door for someone, or not saying "Thank you"), or "insulting".  Indeed, Pressman would have the Court all but endorse such conduct by describing it as "commonplace".  Perhaps in the circle in which Pressman travels such a breach of trust and honesty is commonplace, but, to ask the Court to endorse such conduct and merely "pooh pooh" it, is wholly unacceptable.

In the case at bar the "outrageous" conduct is made up of two parts: (a) the fact that Pressman was committing adultery when he had sexual relations with Ms. Purcell, and (b) his lying to her about his marital status.  See Third Party Complaint at ¶¶ 115, 116.  In most of the cases in which adultery has been found not to rise to the level of "outrageous conduct", the issue has arisen in the context of a matrimonial action.  *See, e.g., Whittington v. Whittington,* 766 S.W.2d 73, 74 (Ky. Ct. App. 1989); *Poston v. Poston,* 112 N.C. App. 849, 436 S.E.2d 854 (1993); *Ruprecht v. Ruprecht,* 252 N.J. Super. 230, 599 A.2d 604, 608 (Ch. Div. 1991).  Similarly, in other cases where there has been an allegation of "outrageous conduct", and such conduct was not deemed "outrageous", the premise has been an illicit love affair — and nothing else.  *See, e.g., Straus v. Cilek,* 418 N.W.2d 378, 379 (Ia. Ct. App. 1987) (husband sued friend for friend's affair with husband's wife).  See also *Doe v. Doe*, 122 Md. App. 295, 712 A.2d 132, 157 (Ct. Spec. App. 1998).

In *Osborne v. Payne*, 31 S.W.3d 911 (S. Ct. Ky. 2000), the Court emphasized that where allegations of outrageous conduct are made, and they relate to some sort of extra-marital affair, "these claims must be approached on a case-by-case basis, . . ."  *Id*. at 915.  There should be no blanket dismissal based upon the unfortunate fact that such conduct exists in society.  The test should rest on each case's facts.  *See, e.g., Quinn v. Walsh*, 49 Mass. App. Ct. 696, 718 (Ct. App. 2000) (collecting cases).

In the case at bar, it was the <u>two factors</u> of the adultery <u>and the lying</u> that lay at the heart of this Cause of Action.  As Ms. Purcell has laid out the elements and her satisfaction thereof in her Complaint (see *supra*), the Court ought not dismiss this Cause of Action as sought by the Third Party Defendant.

I. The Court Must Apply New York Law, and Entertain the Cause of Action Based Upon N.Y. C.P.L.R. § 213-c (See Third Party Defendants' Memorandum of Law at pp. 17-21)

In an exposition on Choice of Law, Pressman argues that the Cause of Action based upon N.Y. C.P.L.R. § 213-c should be precluded, as such a cause of action does not exist under Connecticut law. Admittedly, sad as it is, the Connecticut legislature has not seen fit to protect the rights of women as the

New York legislature has.  Nevertheless, the Third Party Defendants' argument is fatally flawed on legal, factual, and procedural grounds.

The Cause of Action is based upon a 2006 New York law that addresses the serious harm done to women who are victimized by a male, even when there has been no criminal action.  The statute recognizes that often times women, out of embarrassment, fear, or intimidation do not report sexual assaults, and, if they do, they merit some sort of private right of action.  While this is as it should be, the Third Party Defendants', and their counsel, disappointingly, would parade this Connecticut defect and champion it in their case.

First of all, the Third Party Defendants have already pled in Court that this Cause of Action can be easily and fully addressed in this Court.  On or about November 24th, 2017, Ms. Purcell commenced suit in the Eastern District of New York as against the Third Party Defendants.  *Purcell v. Pressman, et al.*, 17-cv-6879.  The Tenth Cause of Action in that lawsuit was the same as is contested here.[9]  On January 16, 2018 Ms. Purcell, in this Court, moved, under 28 U.S.C. §§ 1404, 1406, to have the case at bar transferred to the case in the Eastern District of New York.  See Dkt. Entry No. 24.  Among the arguments of Ms. Purcell was that "it is argued, herein, that this [*i.e.*, the Cause of Action under § 213-c] is a matter better left to a District Court (and jury) in New York to adjudicate, rather than in Connecticut."  See Dkt. Entry No. 24-1 at pp. 8-9.  The response of the Third Party Defendants to this claim regarding Section 213-c was that "[e]ven if this Court assumes, as Defendant contends, that New York law applies to all claims in this dispute 'the "governing law" factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states.'"

---

[9] For some unfathomable reason, Pressman finds some comfort in the fact that this Cause of Action is the Tenth one enumerated.  See Third Party Defendants' Memo of Law at p. 21.  Why, or how, this relates to the legal or factual issues here is not clear and, is, at best, an attempt at grasping at straws when it, of course, matters not a whit at how Causes of Action are enumerated, in what order they appear, or how then are numbered.

Response to Motion to Transfer, Dkt. Entry No. 25, at pp. 9-10.  Thus, it has already been conceded by the Third Party Defendants that this Court is thoroughly capable of adjudicating this issue.[10]

On a factual basis, the Cause of Action rooted in Section 213-c is based upon the actions of Pressman when the parties were at the Lowes Hotel in Manhattan in June 2017.  See Third Party Complaint at ¶ 138.  While the Third Party Plaintiff references other location where the offending behavior by Pressman took place (*e.g.*, Antigua, North Carolina, and Connecticut), even if we assume that the statute does not confer extra-territorial jurisdiction, the abusive actions of Pressman in New York serve as a valid basis for invoking the statute.

As to the legal argument as to Choice of Law, as the Third Party Defendants concede, "a tort claim is determined by the law of the place where the injury took place, . . ."  Third Party Defendants' Memo of Law at p. 18.  In the case at bar, the subject conduct occurred in New York State.  The fact that similar offending conduct occurred in other jurisdictions, does not divest, for choice of law purposes, the Court in Connecticut from applying the law to the events in New York.  If the Court here applies the Restatement 2d Conflict of Laws § 145(2) guidelines (see *id*. at pp. 18-19), the result will be the same.[11]  The injury complained of took place in New York.  As was stated *supra*, the fact that Pressman engaged in similar conduct geographically elsewhere is not relevant to the inquiry (save for a F.R.E. Rule 404(b)(1) issue regarding similar conduct).[12]  As to the issue of the "domicile" of the parties, the New York law is

---

[10] It would also be a tremendous waste of limited judicial resources to strike this Cause of Action on the grounds sought by the Third Party Defendants.  All that would happen would be that Ms. Purcell would then file a separate action in New York County Supreme Court, detailing the offending actions of Pressman, and pursing her claims there.  Since the statute of limitations is five years there, would be no procedural basis to bar the action. See C.P.L.R. §§ 301, 503(a).

[11] Needless to say, the issue is left to the informed discretion of this Court.  The Restatement is merely advisory, and is not binding on the Court (*see, e.g., In re Wright Medical Technology Liability Litigation*, 178 F. Supp.3d 1321, 1349 n. 17 (N.D. Ga. 2016)); and the fact that Courts have relied upon it in the past is no further requirement that it be applied blindly in this, or any other, case.

[12] Indeed, in the course of discovery, the Third Party Plaintiff may well discover similar conduct of Pressman with other individuals demonstrating a course of conduct that renders these other events admissible.  See also F.R.E. Rules 413(d), 415, permitting the admission of similar conduct in civil "sexual assault" cases.  See *Seeley v. Chase*, 443 F.3d

applicable as the alleged offending conduct occurred in New York, and, as stated above, relevant and similarly admissible conduct took place in Connecticut.  Under any examination of this factor, the Court here is well suited to entertain this Cause of Action.  Assuming *arguendo* that the relationship between Pressman and Ms. Purcell was "centered" in Connecticut, many of the factual events, that will be heard and decided by a factfinder, took place outside the State.  *See, e.g.*, Third Party Complaint at ¶¶ 19-24, 34, 35, 138.  Indeed, in Pressman's own Complaint, he is seeking the return of gifted items that he made as gifts, when the parties were in a state or location other than Connecticut (and well before the parties moved to Connecticut).  *See, e.g.*, Pressman Complaint at ¶¶ 13-24, 28-32.  Since Pressman, initially and pro-actively, has already opted to pursue his claim in this District Court he is hard-pressed to assert any claim that this Court lacks jurisdiction to adjudicate all of the causes of action that arose out of the "relationship" between the parties.

Thus, this Cause of Action is ripe for adjudication before this Court.

### <u>Conclusion</u>

For all of the foregoing reasons, the Court should deny, in full, the Motion to Dismiss as filed by the Third Party Defendants.

Dated: June 5, 2018
　　　Somers, NY

Respectfully submitted,

/s/ *Bernard V. Kleinman*
Bernard V. Kleinman, Esq.

---

1290, 1296-97 (10th Cir. 2006).  *Cf., Davis v. Pope*, 2013 WL 3934209 at *4 (S.D. Ga. 2013) (finding similar conduct alleged under Rule 415 not admissible because the offending conduct, unlike that in the case at bar, was <u>not</u> among those enumerated in Rule 413(d)(1) thru (d)(5)).

## CERTIFICATE OF SERVICE

I am Bernard V. Kleinman, an attorney admitted *pro hac vice* before this Court.  I do affirm under the

laws against perjury of the United States, that I did serve the within Response to Third Party Defendants'

Rule 12(b) Motion to Dismiss, and attendant Exhibits, upon the attorney for the named Plaintiff herein,

Catherine Keenan, Esq., by ECF filing with this Court.

Dated: 05 June 2018
      Somers, NY

          /s/ *Bernard V. Kleinman*
            Bernard V. Kleinman, Esq.
            Attorney for Third Party Plaintiff
            ANNA PURCELL