**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROBERT PRESSMAN,     Plaintiff, Third-Party Defendant | : : : | CIVIL CASE NO. 3:17-CV-1918 (JCH) |
| v. | : : | |
| ANA PURCELL,     Defendant, Third-Party Plaintiff | : : : | NOVEMBER 20, 2018 |
| v. | : : | |
| TRITON EQUITY PARTNERS, LLC, AND LA BOB, INC,     Third-Party Defendants. | : : : : | |

**RULING ON THIRD-PARTY DEFENDANTS' MOTION TO DISMISS (DOC. NO. 36)**

**I.    INTRODUCTION**

Defendant and third-party plaintiff Ana Purcell ("Purcell") filed a Counterclaim and Third-Party Complaint alleging ten causes of action against plaintiff and third-party defendant Robert Pressman ("Pressman"), and third-party defendants Triton Equity Partners, LLC ("Triton") and LA Bob, Inc. ("LA Bob"), (collectively "third-party defendants").

The third-party defendants have filed a Motion to Dismiss (Doc. No. 36) the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Counts.  For the reasons that follow, the Motion to Dismiss is granted in part.

**II.    STANDARD OF REVIEW**

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. Id. However, when reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor. See Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

Allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b). The Complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015).

If, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, extrinsic evidence that is attached to the pleadings or incorporated by reference may be considered on a motion to dismiss, as well as matters of which judicial notice may be taken. See New York Pet Welfare

Ass'n, Inc. v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

## III. FACTS[1]

Pressman and Purcell met in Puerto Rico in April 2017.  See Purcell's Verified Answer and Counter-Claim (Doc. No. 30) ("Purcell Counterclaim") ¶ 19.  According to Purcell, Pressman approached her in the lounge area of a hotel in a manner that "could be characterized as an attempt to pick her up, and begin some sort of romantic and/or sexual relationship."  Id. ¶ 20.  Pressman sent Purcell several emails shortly thereafter, expressing his affections.  Id. ¶¶ 27–28.  Pressman and Purcell thereafter pursued a relationship; Pressman regularly purchased gifts for Purcell, including, inter alia, a ring, travel for Purcell and her son, tickets to Broadway shows, and stays at hotels in New York.  See id. ¶¶ 33–34.  During this time, Pressman indicated he wished to marry Purcell.  Id. ¶ 34.

Purcell alleges she entered a contract with the third-party defendants as an inducement to her moving to Connecticut.  Id. ¶ 35.  According to the contract, Triton would pay for all rent and utilities on a property in Connecticut and would provide Purcell with a sizeable lump sum payment and monthly stipend.  Id. ¶ 39.  Purcell co-signed a lease based on her agreement with the third-party defendants.  Id. ¶ 42.  Purcell and Pressman moved into the apartment in late August 2017.  Id. ¶ 44.  Shortly thereafter, Pressman suffered a medical emergency, and he was transported to a local

---

[1] The facts are taken from Purcell's Third-Party Complaint, see Purcell's Verified Answer and Counter-Claim ("Purcell Counterclaim") (Doc. No. 30) and from Pressman's Verified Complaint, see Pressman's Verified Complaint ("Pressman Compl.") (Doc. No. 1).  Where facts are taken from Pressman's Complaint, they are admitted by Purcell.

hospital. Id. ¶ 45. Purcell alleges that it was after Pressman's hospitalization that she first discovered that Pressman, contrary to his assertions, was married. Id. ¶ 46. Following the discovery of Pressman's marital status, the relationship between Pressman and Purcell quickly dissolved. Pressman commenced a lawsuit against Purcell alleging that Purcell denied him access to the rental property. Id. ¶ 51. He also filed suit against the landlords of the property related to payment of rent, id. ¶ 55, and filed a police report alleging that Purcell assaulted him, id. ¶ 58. The police report did not lead to arrest or criminal charges. Id. ¶ 85.

Pressman filed suit against Purcell in this court, seeking damages for alleged fraud, conversion, and unjust enrichment. See generally Pressman Compl. Purcell filed a Counterclaim and Third-Party Complaint, seeking, inter alia, damages for fraud, multiple torts, and breach of contract. See generally Purcell Counterclaim. The third-party defendants filed the Motion to Dismiss now before the court, seeking partial dismissal of Purcell's claims.

## IV. DISCUSSION

### A. Fraud in the Inducement and Fraudulent Misrepresentation

In Count One, Purcell alleges that the third-party defendants are liable for fraud in the inducement. See Purcell Counterclaim ¶¶ 60–67. In Count Five, Purcell alleges that the third-party defendants are liable for fraud and misrepresentation. Id. ¶¶ 98–105. To state a claim for fraudulent misrepresentation or fraudulent inducement in Connecticut, the plaintiff must allege that (1) the defendant made a representation of fact, (2) which was untrue and known to be untrue by defendant; (3) it was made to

4

induce the plaintiff to act upon it; and (4) the plaintiff did so act upon that false representation to his injury.  See Simms v. Seaman, 308 Conn. 523, 548 (2013); Peterson v. McAndrew, 160 Conn. App. 180, 204 (2015).  The third-party defendants argue that (1) the fraud claims against Pressman are barred by the Connecticut heart balm statute, and (2) the fraud claims against LA Bob and Triton should be dismissed for failure to plead with particularity, pursuant to Rule 9(b).  The court addresses each argument in turn.

### 1. Fraud Claims Against Pressman

Purcell alleges, inter alia, that she was "induced to forgo her then current employment . . . move her home, her personal property, and uproot her child, based upon representations as made by Pressman."  Purcell Counterclaim ¶ 62.  Purcell further alleges that Pressman's representations "were premised upon (a) a promise to marry [Purcell], there being no bar to the execution of such promise, and (b) the contractual promise, in writing . . . with Third-Party Defendant Triton."  Id. ¶ 63.  It is undisputed that Pressman was in fact married at this time.  Purcell alleges she suffered damages because of this misrepresentation, including being caused to pay a substantial sum in lease payments on a rental property.  Id. ¶¶ 64–66.

The third-party defendants argue that the claims of fraud in the inducement and fraudulent misrepresentation against Pressman are barred by Connecticut's heart balm statute.  See Conn. Gen. Stat. Ann. § 52-572b.  The Supreme Court of Connecticut has explained that the purpose of the heart balm statute was to prevent suits that sought damages for "confused feelings, sentimental bruises, blighted affections, wounded

5

pride, mental anguish and social humiliation; for impairment of health, for expenditures made in anticipation of the wedding, for the deprivation of other opportunities to marry and for the loss of the pecuniary and social advantages which the marriage offered." Piccininni v. Hajus, 180 Conn. 369, 373 (1980). In the same opinion, however, the Court stressed that "Heart Balm statutes should be applied no further than to bar actions for damages suffered from loss of marriage, humiliation, and other direct consequences of the breach, and should not affect the rights and duties determinable by common law principles. Id. at 372.

In Piccininni, the plaintiff sought recovery for damages incurred in renovating, improving, and furnishing a home that the defendant had fraudulently represented would serve as a marital home. See id. at 369. The Supreme Court of Connecticut overruled the lower court's decision to strike the plaintiff's claim, concluding that the plaintiff was not asserting damages based on the defendant's failure to marry the plaintiff, but rather that the claim arose from the defendant fraudulently inducing the plaintiff to transfer money and property. See id. at 373–74 ("The Act does not preclude an action for restitution of specific property or money transferred in reliance on various false and fraudulent representation.").

Similarly, in this case, Purcell alleges that the damages she suffered stemmed from reliance on Pressman's false statements that he was unmarried, not from his breach of a promise to marry her. See Purcell Counterclaim ¶ 99 ("An essential and material part of [Purcell's agreement" to move to Connecticut . . . was Pressman's

6

representation that he was not married.").² Moreover, Pressman alleges that she spent considerable sums of money in reliance on Pressman's misrepresentations, including obligating herself on a tenancy contract. Id. ¶ 66. The allegations in this case are similar to those in Piccininni, and are sufficient to take the claims out of the ambit of the heart balm statute.

Purcell has alleged sufficient facts to raise a plausible inference that (1) Pressman falsely represented that he was unmarried; (2) Pressman knew that statement to be false when made; (3) the statement was made to induce Purcell's reliance upon the misrepresentation; (4) Purcell acted in reliance of the false statement; and (5) Purcell suffered damages. The court concludes Purcell has stated plausible claims of fraudulent inducement and fraudulent misrepresentation against Pressman. The Motion to Dismiss Count One and Count Five against Pressman is denied.

2. Fraud Claims against Triton and LA Bob

In Count One and Count Five, Purcell has also alleged that Triton and LA Bob are liable for fraud in the inducement and fraudulent misrepresentation. See id. at 15, 23. The third-party defendants argue that Purcell failed to state her claims of fraud against Triton and LA Bob with particularity, as required by Federal Rule of Civil Procedure 9(b). As noted above, see supra at 2, the Second Circuit has interpreted Rule 9(b) to require that the plaintiff, in her Complaint, to "(1) detail the statements (or

---

² In Count One of Purcell's Counterclaim, she alleges that Pressman's representations were premised upon "a promise to marry [Purcell]." Purcell Counterclaim ¶ 63. To the extent the claim relies on the promise to marry, it is barred by the Connecticut heart balm act, and dismissed.

omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Loreley Fin. (Jersey) No. 3 Ltd., 797 F.3d at 171.

Purcell alleges that she entered into a contractual agreement with Triton. See Purcell Counterclaim at ¶ 63; id. at Exhibit A. She also alleges that the third-party defendants are jointly liable under the contract. See Purcell Counterclaim ¶ 96. However, Purcell's Counterclaim alleges no fraudulent statements by LA Bob or Triton, nor does it allege damages flowing from any such fraudulent statements by them.

Apparently recognizing that, Purcell seeks to hold LA Bob ant Triton liable through Pressman. Purcell alleges that "any pretense of personal immunity is fractured by [the] contract and the fact that it was, in fact, a personal contract between Pressman and Purcell." Id. ¶ 37. In her Response to the third-party plaintiff's Motion to Dismiss, Purcell argues that LA Bob and Triton are liable for Pressman's fraudulent statements because Pressman was a member of LA Bob and Triton, and further, that LA Bob and Triton are shells for Pressman himself. See Purcell's Response to Motion to Dismiss (Doc. No. 42) at 15. In effect, Purcell seeks to reverse-pierce the corporate veil and hold Triton and LA Bob liable for Pressman's allegedly tortious conduct.

In Connecticut, "the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." Naples v. Keystone Bldg. & Dev. Corp., 295 Conn. 214, 233 (2010). The

Counterclaim states that Pressman engaged in business dealings under the names of LA Bob and Triton, see Purcell Counterclaim ¶ 24, and that LA Bob, Pressman, and Triton shared a street address, see id. ¶ 26. However, there are not sufficient plausible allegations in the Counterclaim, apart from the conclusory statement that "any pretense of personal immunity [was] fractured" by the third-party defendants alleged entry into a contract with Purcell, upon which a legal claim for piercing the corporate veil might rest. Sharing an address and use of the corporate structure, by themselves, are not sufficient to pierce the corporate veil. See Naples, 295 Conn. at 233–34 (noting that "the corporate veil is pierced only under exceptional circumstances," and that in Connecticut, "courts decline to pierce the veil of even the closest corporations in the absence of proof that failure to do so will perpetrate a fraud or other injustice").

In her Response, Purcell cites to Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship, 309 Conn. 342, 357 (2013), for the proposition that Triton and LA Bob are responsible for Pressman's actions because he signed the contract on their behalf. See Purcell Resp. at 15. Putting aside the fact that the contract provided as Exhibit A to the Counterclaim was unsigned, Connecticut case law, including the cited case, does not support Purcell's argument. Instead, Coppola stands clearly for the conclusion that a principal's liability in contract is independent of an agent's liability in tort. See Coppola Const. Co., 309 Conn. at 357 ("[A] remedy on the contract is independent of a remedy for negligent misrepresentation."). Absent sufficient allegations on the face of the Counterclaim to plausibly infer that LA Bob and Triton were shells of Pressman, and absent allegations that LA Bob or Triton independently engaged in conduct meeting the

9

elements of fraud, the court concludes that Purcell has failed to state a claim upon which relief may be granted. The Motion to Dismiss Count One and Count Five as to LA Bob and Triton is granted.

B.      Abuse of Process

In Count Two of the Counterclaim, Purcell alleges that Pressman is liable for Abuse of Process. See Purcell Counterclaim at 17. In Connecticut, an action for abuse of process requires a showing that a person has used "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." See, e.g., Mozzochi v. Beck, 204 Conn. 490, 494 (1987). Though the Supreme Court of Connecticut has not required a plaintiff to demonstrate a favorable termination of the action that forms the basis of the abuse of process claim, it has concluded that "the eventual outcome of [the underlying] action and the evidence presented by the parties therein would be relevant in litigating an abuse of process claim." Larobina v. McDonald, 274 Conn. 394, 407 (2005). In Larobina, finding that the issues in dispute in the abuse of process claim had not yet been resolved in the underlying action, the Supreme Court of Connecticut affirmed dismissal of the claim as premature. See id. at 407–08.

Here, the foundation for Purcell's abuse of process claim are the allegations raised by Pressman against Purcell in this very case. As in Larobina, the court concludes that an action for abuse of process prior to the determination of the underlying action would be premature and duplicative and would require the court to

10

twice litigate the same issues.  Id. at 408.  The Motion to Dismiss Count Two is therefore granted.

      C.      Malicious Prosecution

In Count Three of the Counterclaim, Purcell alleges that Pressman is liable for malicious prosecution.  The basis of this allegation is that Pressman filed a police report, on or about August 28, 2017, which alleged that Purcell was physically and verbally abusive towards Pressman.  See Purcell Counterclaim ¶¶ 79–80.  Purcell states that law enforcement found "no probable cause" to pursue the matter.  Id. ¶ 85.  In Connecticut, an action for malicious prosecution against a private person requires a plaintiff to prove the following:

> (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

Bhatia v. Debek, 287 Conn. 397, 404 (2008).

Purcell has not alleged that she was arrested or that criminal proceedings against her were ever instituted.  In fact, she acknowledges that law enforcement declined to pursue the matter for lack of probable cause.  Purcell Counterclaim ¶ 85.  Given that there was no "actual institution of the underlying action," Bhatia, 287 Conn. at 406, the Counterclaim fails to state a claim for which relief may be granted.  The Motion to Dismiss Count Three is granted.

D. <u>Breach of Contract and Covenant of Good Faith and Fair Dealing</u>

Count Four of the Counterclaim alleges that the third-party defendants are liable for breach of contract, while Count Six of the Counterclaim alleges that the third-party defendants are liable for breach of the covenant of good faith and fair dealing. See Purcell Counterclaim at 21, 25. The third-party defendants argue that both claims should be dismissed as to LA Bob because "no promises are alleged to have been exchanged between Purcell and LA Bob." Third-Party Defendants' Mem. in Supp. of Mot. to Dismiss ("Defs. Mem. in Supp.") (Doc. No. 36-1) at 14.

In Connecticut, "[t]he law of the governing jurisdiction of a foreign limited liability company governs . . . the liability of a member as member and a manager as manager for a debt, obligation or other liability of the company." Conn. Gen. Stat. Ann. § 34-275. Triton is a New York limited liability company. See Purcell Counterclaim ¶ 25. Under New York law, "[i]t is well established that officers or agents of a company are not personally liable on a contract if they do not purport to bind themselves individually." <u>Georgia Malone & Co. v. Ralph Rieder</u>, 926 N.Y.S.2d 494, 496–97 (2011), <u>aff'd sub nom.</u> <u>Georgia Malone & Co. v. Rieder</u>, 19 N.Y.3d 511 (2012). LA Bob's inclusion on the signature line of the contract in its capacity as Managing Member of Triton is not, without more, adequate to establish its liability on the contract.

Purcell argues that LA Bob is a proper defendant as to the breach of contract and breach of the covenant of good faith and fair dealing because (1) LA Bob "may well hold some liability . . . based upon its execution of the contract;" (2) the third-party defendants all shared the same physical address; and (3) Pressman has executed all

12

documents by naming Triton, LA Bob, and himself.  See Purcell Response at 14, 17.
Purcell attached Exhibits in support of these arguments to her Response.  However, in
reviewing a motion to dismiss, the court is limited to the allegations stated on the face of
the Counterclaim, as well as documents attached to the Counterclaim, or incorporated
by reference.  Purcell's Counterclaim makes no reference to any basis, beyond LA
Bob's inclusion on the signature line of the contract and the shared physical address of
the third-party plaintiffs, from which a reasonable inference of LA Bob's contractual
liability could be drawn.

Because the Counterclaim fails to allege facts sufficient to establish that LA Bob
was liable for Triton's alleged breach of contract, it fails to state claims upon which relief
may be granted.  The Motion to Dismiss Counts Four and Count Six as to LA Bob is
granted.

     E.     Negligent and Intentional Infliction of Emotional Distress

Count Seven of the Counterclaim alleges that Pressman is liable for intentional
infliction of emotional distress; Count Eight alleges that Pressman is liable for negligent
infliction of emotional distress.  In Connecticut, to establish a claim for intentional
infliction of emotional distress, a plaintiff must establish that (1) that the actor intended
to inflict emotional distress or that he knew or should have known that emotional
distress was the likely result of his conduct; (2) that the conduct was extreme and
outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress;
and (4) that the emotional distress sustained by the plaintiff was severe.  Carrol v.
Allstate Ins. Co., 262 Conn. 433, 442–43, (2003).  To establish a claim for negligent

13

infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiffs distress. Id. at 444.

The third-party defendants argue (1) that the claims of intentional and negligent infliction of emotional distress are barred by the Connecticut heart balm statute, and (2) that the Complaint fails to allege facts sufficient to plausibly allege an intentional infliction of emotional distress claim. As the court has noted, see supra at 5–6, the Connecticut heart balm statute bars suits seeking damages for the breach of a promise to marry, for the common law claim of alienation of affections, and for the "confused feelings, sentimental bruises," and other consequences incident to the end of romantic relationships. See Brown v. Strum, 350 F. Supp. 2d 346, 350 (D. Conn. 2004). In determining whether the heart balm statute applies, Connecticut courts "consider the underlying conduct alleged in the plaintiff's complaint." Id. As the basis for both the claims of intentional and negligent infliction of emotional distress, Purcell alleges that Pressman engaged in "outrageous and extreme" conduct when he lied about his marital status with the intent to engage in a romantic and sexual relationship with Purcell. See Purcell Counterclaim ¶¶ 115, 122. While Purcell frames the tortious act as Pressman's lie about his marital status, the core of her Counterclaim is the emotional distress suffered following the end of the romantic relationship between her and Pressman. See id. ¶ 115 (noting Purcell "engaged in a romantic relationship" with Pressman and "had

14

sexual relations with him based upon a fraudulent and fabricated pretense.") Purcell alleges that she suffered psychological and physical harm because Pressman "took advantage of [Purcell] and her willingness to become involved with what she thought was a single available male." Purcell Counterclaim ¶ 116.

Unlike Purcell's claims of fraud, the emotional distress claims seek "recovery of damages based upon . . . sentimental bruises, blighted affections, wounded pride, [and] mental anguish . . . ." Brown v. Strum, 350 F. Supp. at 350. It was precisely this form of action the Connecticut legislature sought to curtail with the enactment of the heart balm statute. While an exception to the heart balm statute exists to seek recovery for specific transfers of money or property made in reliance on a fraudulent statement, see Piccininni, 180 Conn. at 373, a plaintiff may not generally "circumvent the statutory prohibition on heart balm actions by recharacterizing them as emotional distress or fraud claims," Brown v. Strum, 350 F. Supp. at 350. Because Purcell's claims of emotional distress flow from traditional heart balm claims, they are barred by Connecticut's heart balm statute. The Motion to Dismiss Counts Seven and Eight is granted.

F. Claims Pursuant to NY C.P.L.R. § 213-c

In Count Ten, Purcell seeks damages "for physical, psychological or other injury or condition suffered by a person" who was a victim of rape, sexual assault, or sexual abuse, under § 213-c of chapter eight of the New York Civil Practice Law and Rules. See N.Y. C.P.L.R. § 213-c. New York C.P.L.R. section 213-c "extends the statute of limitations to five years on intentional torts for several specifically defined causes of

15

action. In order to avail itself of the extended limitation period, a party must allege conduct that violates [New York] Penal Law §§ 130.35, 130.50, 130.70 or 130.75." Monaghan v. Roman Catholic Diocese of Rockville Ctr., No. 600406/15, 2016 N.Y. Misc. LEXIS 5569, at *4 (N.Y. Sup. Ct. May 25, 2016).

Purcell alleges that, on multiple occasions while with Pressman, she lacked the capacity to consent to sexual interactions in which they engaged. See Compl. ¶¶ 136–38. Purcell's allegations include claims of assault in New York, Antigua, and Connecticut. See id. ¶ 138. The third-party defendants argue that the claim should be dismissed because choice of law rules require that Connecticut, not New York Law, controls. See Third-Party Defendants' Mem. in Supp. of Mot. to Dismiss at 17–18.

A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which the federal court sits. Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 494–97 (1941). Both parties incorrectly argue that, in the case of tort claims, Connecticut courts apply the law of the place where the injury took place. In fact, Connecticut has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. See Jaiguay v. Vasquez, 287 Conn. 323, 349 (2008); W. Dermatology Consultants, P.C. v. VitalWorks, Inc., 322 Conn. 541, 558 (2016). Under the Restatement approach, absent a statutory directive as to the applicable choice of law, courts are directed to weigh several factors to determine which state has the most significant relationship to the underlying claim.

In evaluating which jurisdiction has the most significant relationship to the claim, Connecticut weigh the following contacts:

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Jaiguay v. Vasquez, 287 Conn. at 352.

The manner of Purcell's pleading makes determination of the most significant relationship especially complicated. In Count Ten, she seeks recovery for harms that occurred in Connecticut, New York, and Antigua. See Purcell Counterclaim ¶ 138. The first two factors, therefore, do not clearly weigh in favor of a choice of law. As the third-party defendants argued in their Memorandum in Support of the Motion to Dismiss, at the time of the alleged harm in June 2017, Purcell was domiciled in North Carolina, while Pressman was domiciled in New York. See Defs.' Mem. in Supp. at 19. At the time of the allegations of harm in Connecticut, Pressman and Purcell were residing together in Connecticut. Pressman Compl. ¶¶ 37–38; Purcell Counterclaim ¶¶ 3. The third factor, therefore, does not provide clear guidance as to a choice of law. The final factor, the place of the relationship between the parties is centered, weighs in favor of applying Connecticut law. The parties' relationship was, as Purcell's claims make clear, centered on Connecticut. While the parties met in Puerto Rico and engaged in activities outside of Connecticut, including in New York and Antigua, they planned to live together in Connecticut, jointly signed a lease on a property in Connecticut, and now seek

17

damages from one another arising out of actions which took place, largely, in Connecticut.

Purcell argues that "it has already been conceded" that this court has jurisdiction to resolve the claim under New York law.  See Purcell Resp. at 20.  The court agrees that it has jurisdiction to resolve claims arising under state law.  However, whether this court has jurisdiction and whether the law of a particular state applies to a claim as it is pleaded are separate questions.  The court concludes that Connecticut has the most significant relationship to the claims brought in Count Ten.  Purcell's Complaint fails to state a claim upon which relief may be granted under Connecticut law.  The Motion to Dismiss Count Ten is granted.

## V.     CONCLUSION

For the foregoing reasons, the third-party defendants' Motion to Dismiss (Doc. No. 36) is **GRANTED** as to Counts Two, Three, Seven, Eight, and Ten, and as to Counts One, Four, Five, and Six against LA Bob and Triton.  The third-party defendants' Motion to Dismiss is **DENIED** as to Counts One and Five against Pressman.

**SO ORDERED.**

Dated this 20th day of November 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge