| | | |
|---|---|---|
| ROBERT PRESSMAN, | : | CIVIL CASE NO. |
| Plaintiff, Third-Party Defendant | : | 3:17-CV-1918 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ANA PURCELL, | : | |
| Defendant, Third-Party Plaintiff | : | AUGUST 19, 2019 |
| | : | |
| v. | : | |
| | : | |
| TRITON EQUITY PARTNERS, LLC, | : | |
| AND LA BOB, INC, | : | |
| Third-Party Defendants. | : | |
| | : | |

**RULING ON PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DOC. NO. 49), THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 54), AND THIRD-PARTY DEFENDANTS' MOTION TO STRIKE RESPONSE (DOC. NO. 58).**

## I.    INTRODUCTION

Plaintiff-Third-Party Defendant Robert Pressman ("Pressman") brought the

present action alleging fraud, conversion, and three counts of unjust enrichment,

against Defendant-Third-Party Plaintiff Ana Purcell.  See Complaint ("Compl.") (Doc.

No. 1).  Purcell filed an Answer and alleged multiple counterclaims, including claims of

fraud, breach of contract, and slander, against Pressman and Third-Party Defendants

LA Bob, Inc. and Triton Equity Partners.  See Answer and Third-Party Complaint

("Purcell Compl.") (Doc. No. 30).  The court previously granted, in part, the Third-Party

Defendants' Motion to Dismiss.  See Order (Doc. No. 52).

Pending before the court are Pressman's Partial Motion for Summary Judgment

(Doc. No. 49), the Third-Party Defendants' Motion for Summary Judgment (Doc. No.

54), and a Motion to Strike (Doc. No. 58).  For the reasons stated below, Pressman's

Partial Motion for Summary Judgment is denied, and the Third-Party Defendants'

Motion for Summary Judgment is granted in part and denied in part.

## II.    STANDARD OF REVIEW

Summary judgment is proper only where, construing the evidence in the light

most favorable to the non-movant, "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a

motion for summary judgment, the moving party bears the burden of establishing the

absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't,

613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies that burden, the

nonmoving party must set forth specific facts demonstrating that there is 'a genuine

issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue

exists where the evidence is such that a reasonable jury could decide in the non-moving

party's favor. See, e.g., Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98,

104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The court's role at summary judgment "is to determine whether genuine issues of

material fact exist for trial, not to make findings of fact." O'Hara v. Nat. Union Fire Ins.

Co. of Pittsburgh, 642 F.3d 110, 116 (2d Cir. 2011). Unsupported allegations do not

create a material issue of fact and cannot overcome a properly supported motion for

summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

The non-moving party "may not rely on mere conclusory allegations nor speculation, but

instead must offer some hard evidence showing that [their] version of the events is not

wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir.1998) (collecting

cases). Additionally, the evidence the court considers in ruling on a motion for summary

judgment must be admissible evidence, or evidence that could be readily reduced to an admissible form at trial.  See LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005); Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.") (citation omitted).

## III.    FACTS

Pressman and Purcell met on or about Apri1 4, 2017, in Puerto Rico, and thereafter began a romantic relationship.  Defendant's Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment ("Purcell 56(a)(2)") (Doc. No. 53) ¶¶ 1–2.  At the time, Pressman was married.  Id. ¶ 3.  In June 2017, Pressman asked Purcell to marry him; Purcell agreed.  Id. ¶ 4.  Pressman told Purcell he was unmarried and that he wanted to be a "total open book."  Id.  On June 23, 2017, Pressman and Purcell travelled to a Cartier store in New York City, where Pressman purchased a sapphire and diamond ring by cashier's check in the amount of $127,300.  Id. ¶ 7.  Pressman proposed marriage to Purcell again in the Cartier store, and Purcell again accepted the ring.  Id. ¶¶ 9–10.  Purcell's understanding was that the ring was an engagement ring. See Deposition of Ana Purcell (Doc. No. 49-2) ("Purcell Dep.") at 56:23–25.[1]

---

[1] Purcell repeatedly objects to the characterization of the ring as an engagement ring.  See, e.g., Def.'s SOF ¶¶ 7–10.  She cites to her Declaration, in which she states that she understood the ring to be an unconditional gift and did not accept it "in contemplation of marriage."  See Declaration of Ana Purcell (Doc. No. 53-2) ("Purcell Decl.") ¶¶ 14–15.  However, the statements in her Declaration, dated December 6, 2018, contradict her earlier deposition testimony from May 3, 2018.  See Purcell Dep. (Doc. No. 49-2) at 56:23–25 ("Q:  And was it your understanding that the ring was an engagement ring? A:  Yes."). "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.  Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 205 (2d Cir. 2014).  "[F]actual issues that a party creates by filing an affidavit crafted to oppose a

Pressman and Purcell made wedding plans during the course of their relationship, including discussing potential dates and locations for a wedding. See id. at 57:5–7, 57:19–25. They moved into a rental home in Greenwich, Connecticut on or about August 28, 2017. Purcell 56(a)(2) ¶ 18. The monthly rental payment on the property was $17,000. Id. ¶ 39. On July 17, 2017, Pressman paid a security deposit on the property in the amount of $34,000, advanced rent in the amount of $19,194, plus five-months additional rent in the amount of $85,000, for a total payment of $138,194. Id. ¶ 41. The payment was made by wire transfer from Pressman's business bank account. Id.

After he suffered a serious, multi-day illness, Pressman was transported by ambulance to a nearby hospital on August 31, 2017. Id. ¶¶ 19, 44. While Purcell was visiting Pressman in the hospital, Pressman terminated their relationship, and no marriage took place. Id. ¶¶ 23–24. On September 6, 2017, Purcell sent an email to Mitch Baker, a friend of Pressman, which stated that "per [Baker's] request," she had put together a list of items promised to her. See Email, Ex. 4 (Doc. No. 49-2) at 82–83. The list of 21 items included, inter alia, a mortgage payment on a home in North Carolina, two years of rent for the Greenwich home so that Purcell's son could finish school, a $10,000 per month allowance for Purcell, tuition at Yale Law School, and $12

summary judgment motion that contradicts that party's prior testimony are not "genuine" issues for trial." Id. The court further notes that it is not entirely clear even from Purcell's Local Rule 56(a)(2) Statement of Facts whether she agrees or disagrees that the ring is an engagement ring. See Def.'s SOF ¶ 12 (stating that Purcell "does not deny" the statement that "Purcell agrees that the blue sapphire ring was an engagement ring," but nonetheless "object[ing] to its characterization as an "engagement ring") Given that Purcell's later Declaration contradicts her deposition testimony, the court treats as admitted the fact that the ring in question was understood to be an "engagement ring." Compare Purcell Decl. ¶¶ 14–15 (stating that Purcell understood the ring to be an unconditional gift and did not accept it "in contemplation of marriage"), with Purcell Dep. at 56:23–25 (answering "Yes" when asked if she understood the ring to be an engagement ring).

million.  See id.  In return for the items requested, Purcell agreed to "release all claims and indemnify and hold harmless" Pressman and his wife, and to refrain from "publish[ing] or shar[ing] information regarding the situation which names either family." Id. at 83.  Pressman did not give Purcell the items requested. Purcell 56(a)(2) ¶ 33. Purcell has not returned the ring.  Id. ¶ 34.

## IV.     DISCUSSION

### A.     Motion to Strike

Pressman and Triton Equity Partners ("Triton") (collectively "Third-Party Defendants") filed a Motion to Strike the Declaration of Alan Berlin, offered by Purcell in her Opposition to the Third-Party Defendants' Motion for Summary Judgment on the Third-Party Complaint.  See Motion to Strike (Doc. No. 58) at 1.  The District of Connecticut Local Rules expressly state that "Motions to strike (a) statements made in a Rule 56(a) statement or (b) the supporting evidence are prohibited."  D. Conn. L. Civ. R. 56(a)(4).  The Berlin Declaration was submitted in support of Purcell's Rule 56(a)(2) Statement in Opposition to Summary Judgment.  The Motion to Strike is denied.

### B.     Motion for Summary Judgment as to Purcell's Counterclaims

The Third-Party Defendants seek summary judgment in their favor as to Purcell's remaining counterclaims.  See Third-Party Defendants' Motion for Summary Judgment on Purcell's Third-Party Complaint ("Defs.' MSJ Purcell Compl.") (Doc. No. 54) at 1. While LA Bob, Inc. was previously a party to this action, all claims against LA Bob were dismissed in this court's earlier Ruling on the Third-Party Defendants' Motion to Dismiss.  See Ruling (Doc. No. 52).  The court also grants the motion to dismiss as to

Count One and Five as to Triton.[2] The remaining counterclaims are: Count One, alleging fraudulent inducement against Pressman; Count Four, alleging breach of contract against Pressman and Triton; Count Five, alleging fraud and misrepresentation against Pressman; Count Six, alleging breach of the covenant of good faith against Pressman and Triton; and Count Nine, alleging slander per se against Pressman.

      1.      Fraud in the Inducement (Count One) and Fraudulent Misrepresentation (Count Five).

Count One of the Third-Party Complaint alleges that Pressman is liable for fraud in the inducement. See Purcell Compl. ¶¶ 60–67, 98–105. To state a claim of fraudulent inducement or fraudulent misrepresentation, a plaintiff must prove that (1) the defendant made a representation of fact; (2) the statement was untrue and known to be untrue by defendant; (3) the statement was made to induce the plaintiff to act upon it; and (4) the plaintiff did so act upon that false representation to his injury. See Simms v. Seaman, 308 Conn. 523, 548 (2013).

Purcell alleges in her Complaint that she "was induced to forgo her then[-]current employment, a possible new position at a higher rate of pay, move her home, her personal property, and uproot her child, based upon representations . . . made by Pressman." Purcell Compl. ¶ 62. She also alleges that "[a]n essential and material part of . . . her agreeing to move to Connecticut with all that that involved, was Pressman's representation that he was not married." Id. ¶ 99.

---

[2] In its ruling in the Motion to Dismiss, the court stated in the conclusion that it granted the motion as to Count Four and Six against Triton. Ruling at 18. However, the court failed to discuss these claims against Triton. See Ruling at 12–13. Thus, the court views Count Four and Six as pending against Triton.

The Third-Party Defendants argue that summary judgment is warranted as a matter of law because there is no genuine issue of fact as to whether: (1) Purcell was induced to forgo her current employment by a promise to marry or a contractual promise; (2) the marriage proposal was a false statement made to induce Purcell to move; (3) the draft written contract exchanged between Pressman and Purcell induced Purcell to move; or (4) false statements were made which induced Purcell to enter into a lease. See Third Party Defendants' Memorandum in Support of Mot. S.J. ("Defs.' Joint Mem. in Supp.") (Doc. No. 54-1) at 4–9. As to Count Five, the Third-Party Defendants argue that Purcell cannot establish that Pressman misrepresented that he was unmarried, and that Purcell cannot prove damages. Id.17 at 19–20.

Purcell's Opposition to summary judgment as to Count One relies almost entirely on the argument that, because credibility issues remain to be determined, summary judgment is inappropriate. Purcell Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Purcell Opp.") (Doc. No. 55-1) at 8 ("The Court here is confronted with a matter of the credibility of Pressman. To grant the relief requested for any of the Counts challenged is error as these belong in the bailiwick of a jury of Ms. Purcell's peers to determine."); id. at 24 ("As credibility is a fact for the jury, this Court's evaluation of her credulity, especially on a Rule 56 Motion, is not proper.").

However, the undisputed evidence establishes that Purcell's employment terminated on May 16, 2017, and that she signed a separation agreement with her former employer on June 8, 2017. See Separation Agreement Letter (Doc. No. 54-2) at 24. The undisputed evidence further establishes that Pressman first proposed to Purcell during a vacation in Antigua, which vacation occurred in June 2017. See Purcell

7

56(a)(2) ¶ 4; id. at 14 ¶ 7; Affidavit of Robert Pressman (Doc. No. 54-2) at 13 ¶ 11. Therefore, there is no genuine issue of fact as to whether Purcell was induced to forego her employment based on a promise to marry—she had already left her employment when any such promise was made to her.

The Third-Party Defendants correctly argue that "[t]he written contract in Exhibit A [between Triton and Purcell] is dated August 20, 2017," and that "[t]here is no evidence that there were any drafts or other written agreements prior to August 20, 2017." Defs.' Joint Mem. in Supp. (Doc. No. 54-1) at 5. Instead, "[t]he evidence of record demonstrates that as of August 20, 2017, the terms of the written contract were still being negotiated between Pressman and Purcell." Id. Moreover, because the draft was dated after Purcell left her job, there is no issue of fact as to whether it induced Purcell to leave her employment. See Purcell Deposition (Doc. No. 54-2) at 62:13–63:09 (reflecting Purcell's admission that, by the time any contractual agreement between Pressman and Purcell was proposed, she had already left her job).

Purcell testified during her deposition that she was induced to forego alternate job opportunities, to give up her career, and to move from North Carolina to Connecticut, based upon discussions with Pressman regarding a contract between himself and Purcell. Id. at 62:13–19 ("[Purcell:] It is fair to say that that contractual proposal was made and affected my decision about whether or not to leave my career, and whether to move and uproot my minor son."). As the Third-Party Defendants argue, "the promises in the draft written contract . . . could not have induced Purcell to move since the decision to move had already been made prior to August 20th," given that "[t]he parties signed a lease dated July 14, 2017, with a move in date of August

8

28th [2017]." Defs.' Joint Mot. in Supp. at 8; Purcell 56(a)(2) ¶¶ 36–38. Summary judgment is therefore granted insofar as Purcell's fraudulent inducement claim rests upon vague "discussions" regarding future contracts between herself and Pressman.

However, there remain issues of material fact as to (1) whether Pressman falsely told Purcell that he was unmarried, (2) when Purcell became aware that Pressman was in fact married, and (3) whether the statement that Pressman was unmarried was material to Purcell's agreement to obligate herself on the tenancy in the Greenwich rental property, or to move herself and her son from North Carolina to Connecticut. These factual issues are properly left for a jury, and summary judgment on the fraudulent inducement count is denied to the extent the claim rests on such alleged false statements by Pressman. The same factual issues preclude a grant of summary judgment as to Count Five, in which Purcell alleges that Pressman is liable for fraudulent misrepresentation.

### 2. Breach of Contract (Count Four)

Count Four alleges that Triton and Pressman breached a contract with Purcell. Purcell Compl. (Doc. No. 30) ¶¶ 89–97. The Third-Party Defendants argue that summary judgment is warranted because (1) Pressman was not a party to any contract in his personal capacity, (2) no enforceable written contract exists, and (3) no enforceable oral contract exists. See Defs.' Joint Mem. in Supp. at 9. Purcell responds that (1) a jury should determine whether veil-piercing so as to render Pressman liable is appropriate; (2) Purcell's partial performance rendered the unsigned contract

enforceable; and (3) that, even if the written contract was not enforceable, an enforceable oral agreement existed.  See Purcell Opp. at 13, 19, 20–21, 23.[3]

First, the court concludes, as a matter of law, that the draft contract dated August 20, 2017, is unenforceable.  This conclusion flows from two separate sources.  First, "[i]t is elementary contract law that in order for a promise or contract to be binding it must be supported by consideration."  Gianoni v. Bristol Gen. Mfg. Holding Co., No. CVX03990497900S, 2002 WL 31938877, at *1 (Conn. Super. Ct. Dec. 19, 2002).  "It is also elementary contract law that past consideration is not valid consideration."  Id. at *2.  In this case, the draft contract noted that "Purcell has already provided to Triton certain valuable information, tactics and strategy pertaining to Triton (and its affiliates) business activities and affairs in connection with Puerto Rico."  Purcell Ex. 1 ("Draft Contract") (Doc. No. 53-3) at 1 ¶ 1.  The draft contract did not include any promise by Purcell to provide further information, and in fact disclaimed any such requirement.  Id. ¶ 2 ("Purcell has fully earned the Payment herein, with no other requirements of Purcell to provide any other information or services to Triton.").  Because the draft contract concerned only past performance, there was no valid consideration given for Triton's promise to pay Purcell, and any contract was unenforceable.

---

[3] Purcell relies upon New York law in arguing the enforceability of the alleged contract.  There is no basis in the record for this court to apply New York law to the contract, and Purcell makes no argument as to why she relies upon New York.  The relationship between the parties in this case was centered in Connecticut, and the damages alleged resulted predominately from conduct alleged to have occurred in Connecticut.  Under Connecticut's "most significant relationship" test, the court concludes that the appropriate law to apply is Connecticut law.  See Macomber v. Travelers Prop. & Cas. Corp., 277 Conn. 617, 640 (2006) ("For the plaintiff's contract claim, we adopt the 'significant relationship' test, and presume the application of the law of the state in which the bulk of the transaction took place.").

Second, the draft contract language—which was never executed—makes clear that the intent of the parties was that the contract was to be executed before it became effective, and furthermore that any duty to pay was premised on the occurrence of a condition precedent. In Connecticut,

> A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the nonfulfilment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstance when they executed the contract.

Town of Stratford v. A. Secondino & Son, Inc., 133 Conn. App. 737, 747 (2012) (citing Lach v. Cahill, 138 Conn. 418, 421 (1951).

The contract language is clear that any payment would be subject to a "Pressman Event." Draft Contract at ¶ 3. The "Pressman Event" was further defined as an event wherein "Robert L. Pressman shall from the execution of this Agreement through August 31, 2019 die" or be disabled for 14 consecutive days. Id. ¶ 4. A fair and reasonable reading of the contract makes clear that a "Pressman Event" was a condition precedent to the contract obligations, and therefore no payment obligation could arise until such a time as such an Event occurred. There is no evidence before the court on which a jury could find that the Pressman Event occurred. Summary judgment is therefore granted in favor of the Third-Party Defendants, as to Purcell's claims resting on the draft contract.

While the Third-Party Defendants argue that Purcell's Complaint sought only to enforce a written contract, see Defs.' Joint Mem. in Supp. at 16, Purcell's Complaint

includes allegations of a preexisting agreement.  <u>See</u> Purcell Compl. ¶ 35 (alleging that Third-Party Defendants proposed a contract "[i]n or around June 15th, 2017," and that Purcell "fully accepted all of the terms of the submitted contract and acted in accordance therewith").  These allegations, which predated the August 20 draft agreement, were sufficient to provide notice of a claim regarding a preexisting, enforceable agreement.

In Connecticut, "an agreement must be definite and certain as to its terms and requirements" in order to qualify as a contract.  <u>Glazer v. Dress Barn, Inc.</u>, 274 Conn. 33, 51 (2005).  The draft contract, dated August 20, 2019, includes language stating that "Triton has previously promised to and agreed with Purcell to pay and compensate Purcell certain specific amounts and value . . . ."  <u>Id.</u> ¶ 2.  This raises a genuine issue of fact as to whether a prior agreement, sufficiently definite so as to contain "specific amounts and value" of compensation, existed between Triton and Purcell.

Purcell also seeks to impute Triton's contractual liability upon Pressman.  To do so requires that Purcell satisfy the requirements to pierce the corporate veil.  In Connecticut, "courts may pierce the corporate veil under one of two theories: either the instrumentality rule or the identity rule."  <u>McKay v. Longman</u>, 332 Conn. 394, 433 (2019).  The Connecticut Supreme Court "has pierced the veil 'only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.'"  <u>Id.</u> (quoting <u>Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.</u>, 187 Conn. 544, 557 (1982)).

Here, Purcell argues that piercing the veil is warranted under the "instrumentality rule." See Purcell Opp. (Doc. No. 55-1) at 15–16.  In Connecticut, the instrumentality rule requires three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Angelo Tomasso, Inc., 187 Conn. at 557 (emphasis in original). Courts look at several factors in determining control and domination, including: "(1) the absence of corporate formalities; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes . . ." Naples v. Keystone Bldg. and Dev. Corp., 295 Conn. 214, 233 (2010).

Based on the evidence before this court, a reasonable jury could find that Pressman exercised sufficient control over the corporate entity to satisfy the first element of the instrumentality rule.  Purcell offered evidence demonstrating that, by the time the August 20 contract was executed, Pressman was the sole officer, director, and member of Triton.  Purcell Opp. at 18.  Furthermore, Pressman testified that there was no official address for Triton, and that the unofficial address was wherever he was located.  Deposition of Robert Pressman (Doc. 55-5) ("Pressman Dep.") at 160:1-3. Finally, Purcell offered evidence that Pressman used Triton's bank account for personal purposes, withdrawing funds to pay Purcell's lawyers for legal services performed on her behalf.  See Purcell Opp. at 14.  A reasonable jury could find that this evidence

demonstrates that Pressman exercised a degree of control over Triton sufficient to satisfy the first element of the instrumentality rule.

Regarding the second element of the instrumentality rule, a genuine issue of material fact remains as to whether Pressman used his control over Triton to perpetrate the violation of his contractual duties. The August 20 contract makes clear that Triton was a party to the alleged preexisting oral agreement ("Triton has previously promised to and agreed with Purcell . . ."). Draft Contract at 1 ¶ 2. While Triton was not formally established until one week after this preexisting oral agreement occurred, Defs.' MSJ Purcell Compl. at 6, this fact is not dispositive. The evidence presented by Purcell creates a question of fact as to whether Pressman used Triton as a way to protect himself from personal liability relating to this oral agreement. See Purcell Opp. at 14, 18. These questions are appropriately left for a jury. Because the breach of contract is the same injury of which Purcell complains, a reasonable jury could find that the third element of the instrumentality rule is easily satisfied.

Summary Judgment is therefore denied as to Count Four insofar as it is based on the existence of a preexisting oral agreement between the parties. It is granted as to any claim based upon the draft written contract dated August 20, 2017.

### 3. Breach of Covenant of Good Faith and Fair Dealing (Count Six)

Count Six of Purcell's Complaint alleges that Triton and Pressman breached the covenant of good faith and fair dealing by filing litigation and police reports in bad faith. See Purcell Compl ¶ 108.

> Under Connecticut law a violation of the implied covenant of good faith and fair dealing occurs where the "defendant . . . impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract . . . in bad faith." Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,

308 Conn. 760, 67 A.3d 961, 986 (2013) (internal quotation marks omitted). Bad faith in this context "implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." Id. (internal quotation marks and ellipsis omitted).

RIDE, Inc. v. APS Tech., Inc., 612 F. App'x 31, 34 (2d Cir. 2015).

As an initial matter, summary judgment is granted in favor of Triton as to this claim. The Third-Party Defendants proffered evidence sufficient to establish that Triton was uninvolved in any of the actions alleged to have breached any duty. See Defs.' Joint Mem. in Supp. at 22–23 (noting that "Triton was not a party to either lawsuit, nor was it the reporting party with respect to the Police Report."). Purcell's Opposition mentions only Pressman's actions and makes no argument as to Triton's liability. See Purcell Opp. at 26–28. Summary judgment is granted as to Triton on Count Six.

Summary judgment is also granted in Pressman's favor as to the claims resting on the filing of two lawsuits against Purcell. The first lawsuit, filed in Connecticut Superior Court, alleged that Purcell illegally locked Pressman out of the Greenwich residence. Pressman argues that the litigation was filed in good faith, evidenced by the fact that the Connecticut court ordered that Purcell give Pressman access to the premises to move his belongings. See Defs.' Joint Mem. in Supp. at 21, 23. In the second lawsuit, Pressman sued the owners of the Greenwich property, after which the parties to that lawsuit entered into a settlement agreement. Id. at 21.

The court order in the lockout action, which required that Purcell grant Pressman access to the property, indicates that the claim was not frivolous, and that the action was brought in good faith. Similarly, the settlement between the Greenwich Property owners and Pressman indicates that the claim was not frivolous. Pressman thus met

his burden to show the lack of any genuine issue of material fact as to whether he filed the lawsuits in bad faith.

In opposition, Purcell came forward with no evidence upon which a reasonable jury could make a finding of bad faith as to either lawsuit. Indeed, Purcell's objection is little more than a collection of conclusory allegations and speculation that "the record shows that Pressman's actions in filing these lawsuits . . . were mere sham attempts to avoid his contractual obligation with the Berlins, and to harm the Third Party Plaintiff." Purcell Opp. at 28. Purcell failed to provide any evidentiary support for her statements. Summary judgment is granted to Pressman as to the claims of bad faith resting on the filing of lawsuits in Connecticut Superior Court.

An issue of fact remains to be determined, however, as to Purcell's claim regarding the criminal complaint filed by Pressman with the Greenwich Police Department. A reasonable jury could conclude that Purcell, through her email to Mitchell Baker, intended to "extort" Pressman in exchange for her silence and agreement to leave him and his wife alone. However, a jury could also conclude, given the language of the email, that Purcell was responding to a request by Mitchell. If a jury were to conclude that the email was a response, not a solicitation, and furthermore conclude that Pressman were aware of the same, it could conclude that a police report was filed in bad faith. Given the many factual and credibility determinations remaining, summary judgment is denied as to Count Six, insofar as it rests on Pressman's filing of a police report.

4.      Slander Per Se (Count Nine)

Count Nine of Purcell's Third-Party Complaint alleges slander per se.  Slander

and libel are encompassed by the claim of defamation.  See Gleason v. Smolinski, 319

Conn. 394, 430 n.30 (2015) ("Defamation is comprised of the torts of libel and slander:

slander is oral defamation and libel is written defamation.").  To establish a prima facie

case of defamation, a plaintiff must show (1) the defendant published a defamatory

statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the

defamatory statement was published to a third person; and (4) the plaintiff's reputation

suffered injury as a result of the statement.  Id. at 430  However, a plaintiff need not

prove reputational harm where the defamatory statement was actionable "per se."  The

Supreme Court of Connecticut has noted that,

> [s]lander is . . . actionable [per se] if it charges a crime. . . .  To be actionable
> per se, the [defamation] must be one which charges a crime which involves
> moral turpitude or to which an infamous penalty is attached. . . . The modern
> view of this requirement is that the crime be a chargeable offense which is
> punishable by imprisonment.

Id. at 430 n.31 (alterations in original).  Contrary to Purcell's argument, see Purcell Opp.

at 30, whether a communication is defamatory per se is a question for the court.  Lowe

v. City of Shelton, 83 Conn. App. 750, 766 (2004).

The police report indicates that Pressman stated (1) that he suffered a stroke and

expected Purcell to help him, but that she did not, and (2) that "Purcell began making

demands for maintaining the lease [at the Greenwich Property], covering her personal

debt and paying her $12 million."  Incident Report (Doc. No. 55-16) at 3.  Pressman

further stated that Purcell stated that she would "embarrass him and his reputation" if he

did not meet her demands.  Id.  Questioned by the investigating officer, Pressman

17

clarified that there was nothing beyond the relationship itself, and the payments and gifts made to Purcell, which could be construed as compromising. Id. Pressman also clarified that there was no unauthorized use of his credit cards or bank accounts. Id. The investigating officer concluded that the matter was civil in nature. Id.

Purcell argued, in her Opposition, that Pressman's statements would support a charge of extortion pursuant to Conn. Gen. Stat. § 53-119(5)(E). Purcell Opp. (Doc. No. 55-1) at 30–31. That statute defines extortion, in part, as when a person obtains property by "instilling in [the victim] a fear that, if the property is not so delivered, the actor or another will . . . expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule." Conn. Gen. Stat. § 53a-119.

The police report notes that Pressman accused Purcell of seeking substantial sums of money, and that he had accused of Purcell of stating that, "unless Pressman acquiesced to her demands, she would embarrass him and his reputation." Incident Report at 3. The court concludes that, if a jury were to find that Pressman's statements to the investigating officer were accurately recorded in the Incident Report, that Pressman accused Purcell of a crime punishable by imprisonment. Such statements would be per se defamatory. Pressman's Motion for Summary Judgment as to Count Nine is denied.

C.    Motion for Summary Judgment as to Pressman's Claims

Pressman has moved for summary judgment in his favor as to a number of his claims against Purcell. Pressman's Motion for Partial Summary Judgement (Doc. No. 49) at 1. He seeks summary judgment as to Count Two, alleging conversion of the

engagement ring; Count Three, alleging unjust enrichment through retention of the same ring; and Count Four, alleging unjust enrichment with regard to the Greenwich rental property.  <u>See</u> Pressman Compl. (Doc. No. 1) at 10–12.

1.      Conversion, Engagement Ring (Count Two)

In Count II, Pressman alleges that Purcell has "assumed and exercised ownership" over the engagement ring "to the exclusion of Pressman's rights."  <u>Id.</u> ¶ 77. "Pressman seeks the return of the Cartier sapphire engagement ring (or its value)." Pressman Memorandum of Law in Support of Partial Summary Judgment ("Pressman Mem. in Supp.") (Doc. No. 49-1) at 6.  Pressman argues that, in Connecticut, an engagement ring is a gift given in contemplation of marriage, and such a gift is conditional upon a subsequent ceremonial marriage.  <u>Id.</u>

The court agrees that the general rule in Connecticut is that gifts given in contemplation of marriage are conditional on the subsequent ceremonial marriage.  <u>See</u> <u>Reid v. Shelton</u>, No. CV116021534S, 2013 WL 7084810, at *2 (Conn. Super. Ct. Dec. 30, 2013) ("The modern view is that the gift of the engagement ring is a conditional gift, the condition being the subsequent marriage of the parties.  If the marriage does not take place, the condition has not been met and the ring should be returned to the donor.").  Moreover, "[a] majority of jurisdictions hold that where an engagement gift is given to a donee in contemplation of marriage, although absolute in form, it is conditional; the donor is entitled to return of the engagement gift upon breach of the engagement."  Barbara Frazier, <u>"But I Can't Marry You": Who Is Entitled to the</u> <u>Engagement Ring When the Conditional Performance Falls Short of the Altar?</u>, 17 J.

Am. Acad. Matrim. Law. 419, 421 (2001).  Notwithstanding this general rule, issues of fact preclude summary judgment in Pressman's favor.

As Purcell notes, weeks prior to purchasing the engagement ring, Pressman presented her with a note, which note stated, "[t]his Jewelry and all other Jewelry that was, or will be given to you are all <u>gifts</u>, and are given unconditionally to you with love." <u>See</u> Purcell 56(a)(2) ¶ 34.  Though there is substantial evidence supporting a conclusion that the ring was given in contemplation of marriage, including Purcell's admission that she viewed the ring as an engagement ring, <u>see</u> Purcell Dep. (Doc. No. 49-2) at 56:23–25,[4] the handwritten (and signed) note given to Purcell by Pressman raises a genuine issue of fact as to whether the ring was intended to be given unconditionally.

The modern rule regarding engagement rings implies a condition of marriage upon the gift of the ring.  <u>See</u> Frazier, 17 J. Am. Acad. Matrim. Law. at 422. ("A majority of jurisdictions recognize that the condition of ensuing marriage may be implied by the nature and inherent symbolism of the engagement ring.").  In this case, however, there is an unresolved issue of fact as to whether the parties sought to expressly overrule that implied conditionality.  Because that fact is material to determination of the claim, summary judgment as to Count Two is denied.

2.      Unjust Enrichment, Engagement Ring (Count Three)

In Count Three, Pressman seeks return of the ring or damages equal to its value, pursuant to the equitable doctrine of unjust enrichment.  <u>See</u> <u>id.</u> at 9.  Pressman relies

---

[4] As noted above, <u>see</u> <u>supra</u> n.1, the court ignores Purcell's statement in her Declaration which contradicts her earlier admission that she viewed the ring as an engagement ring.

upon "the same reasons" as his argument in favor of summary judgment as to Count Two.  <u>See</u> <u>id.</u> at 9.  However, the same issues of fact that precluded summary judgment as to Count Two—whether the ring was intended to be given as an unconditional gift—bar summary judgment as to this count, and summary judgment is therefore denied.

### 3. Unjust Enrichment, Rental Property (Count Four)

Finally, Pressman seeks summary judgment as to Count Four, in which he seeks Purcell's "proportional share of the rent and security deposit for the Greenwich house." <u>Id.</u>  Summary judgment as to this claim is also denied.  It remains to be determined how, if at all, Pressman and Purcell intended to proportion the rent at the Greenwich home.  Pressman offered no evidence that they agreed to split the rent equally, and indeed there is evidence upon which a jury could find that Pressman intended to pay the total rent payment.  Defs.' Joint Mem. in Supp. at 3.  Moreover, it is unclear that any mutual obligation that Pressman and Purcell may have had to the landlord through the Lease would require that they be equally obligated to <u>one another</u> based on any damages flowing from that agreement.  Because these are factual issues which remain unresolved and which are both material and disputed, summary judgment is denied.

## V. CONCLUSION

For the foregoing reasons, Pressman's Partial Motion for Summary Judgment (Doc. No. 49) is **DENIED**, the Third-Party Defendants' Motion to Strike (Doc. No. 58) is **DENIED**, and the Third-Party Defendants' Motion for Summary Judgment (Doc. No. 54) is **GRANTED IN PART AND DENIED IN PART**.

The Third-Party Defendants' Motion for Summary Judgment is granted as to Count One, insofar as Count One based upon claims that Purcell was induced to forego her employment based on a promise to marry, or that she was induced to leave her employment or move to Connecticut based on a written contract. It is denied as to Count One in all other respects.

The Third-Party Defendants' Motion for Summary Judgment is granted as to Count Four, insofar as Count Four is based upon breach of the August 20, 2017 Draft Contract. It is denied insofar as Count Four is based on evidence of a preexisting, enforceable agreement between Pressman and Purcell.

The Third-Party Defendants' Motion for Summary Judgment is granted as to Count Six insofar as Count Six is based upon Pressman's filing of litigation and denied insofar as Count Six is based upon Pressman's filing of a police report.

The Third-Party Defendants' Motion for Summary Judgment is denied as to Count Five and Count Nine.

**SO ORDERED.**

Dated this 19th day of August 2019 at New Haven, Connecticut.


_____
Janet C. Hall
United States District Judge